**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| GUARDIAN INDUSTRIES CORP., | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DELL, INC; GATEWAY, INC.; | ) | |
| HEWLETT-PACKARD COMPANY; ACER INC.; | ) | |
| ACER AMERICA CORPORATION; | ) | |
| AOC INTERNATIONAL; | ) | |
| ENVISION PERIPHERALS, INC,; | ) | |
| TPV TECHNOLOGY, LTD.; | ) | |
| TPV INTERNATIONAL (USA), INC.; | ) | C.A. No. 05-27-SLR |
| AU OPTRONICS CORPORATION; | ) | |
| AU OPTRONICS CORPORATION AMERICA | ) | **JURY TRIAL DEMANDED** |
| a/k/a AU OPTRONICS AMERICA, INC.; | ) | |
| BENQ CORPORATION; | ) | |
| BENQ AMERICA CORPORATION; | ) | |
| CHUNGHWA PICTURE TUBES, LTD. a/k/a | ) | |
| CHUNGHWA PICTURE TUBES COMPANY; | ) | |
| TATUNG COMPANY; | ) | |
| TATUNG COMPANY OF AMERICA, INC.; | ) | |
| BOE HYDIS TECHNOLOGY COMPANY, LTD; | ) | |
| BOE HYDIS AMERICA INC.; | ) | |
| CHI MEI OPTOELECTRONICS; | ) | |
| COMPAL ELECTRONICS, INC.; | ) | |
| DELTA ELECTRONICS, INC.; | ) | |
| DELTA PRODUCTS CORPORATION; | ) | |
| DELTA ELECTRONICS (THAILAND) | ) | |
| PUBLIC COMPANY, LTD.; | ) | |
| HANNSTAR DISPLAY CORPORATION; | ) | |
| JEAN CO., LTD.; LITE-ON TECHNOLOGY | ) | |
| CORPORATION; LITE-ON, INC. | ) | |
| a/k/a LITEON TRADING USA, INC.; | ) | |
| MAG TECHNOLOGY COMPANY, LTD.; | ) | |
| MAG TECHNOLOGY USA , INC.; | ) | |
| PROVIEW INTERNATIONAL HOLDINGS, LTD.; | ) | |
| PROVIEW TECHNOLOGY, INC.; | ) | |
| PROVIEW ELECTRONICS COMPANY, LTD; and | ) | |
| QUANTA DISPLAY, INC. | ) | |
| Defendants. | ) | |

**DEFENDANT GATEWAY, INC.'S OPENING BRIEF**
**IN SUPPORT OF ITS MOTION TO STAY**

# **TABLE OF CONTENTS**

NATURE AND STAGE OF THE PROCEEDING..............................................................2

SUMMARY OF ARGUMENT .........................................................................................3

STATEMENT OF FACTS ................................................................................................4

ARGUMENT.....................................................................................................................5

     I.     STAYING THE CASE AS TO GATEWAY, AN LCD
           CUSTOMER, WOULD SIMPLIFY AND STREAMLINE
           THE LITIGATION REGARDLESS OF THE OUTCOME
           OF THE CASE WITH RESPECT TO THE DEFENDANT
           LCD MANUFACTURERS ...............................................................8

     II.    GUARDIAN  WILL NOT BE PREJUDICED IF A STAY
           IS ENTERED FOR GATEWAY..............................................10

     III.   GATEWAY WILL BE PREJUDICED IF A STAY IS NOT
           GRANTED IN ITS FAVOR......................................................11

CONCLUSION.................................................................................................................12

# TABLE OF AUTHORITIES

*Commissariat A L'Energie Atomique v. Dell Computer Corp.*,
   C. A. No. 03-484-KAJ, 2004 WL 1554382 (D. Del. May 13, 2004) ........... *passim*

*Honeywell Int'l Inc. v. Audiovox Communications Corp.*,
   C. A. No. 04-1337-KAJ (D. Del. May 18, 2005) .......................................... *passim*

*Katz v. Lear Siegler, Inc.*,
   909 F.2d 1459 (Fed. Cir. 1990) .........................................................................5, 6, 8

*United Sweetener USA, Inc. v. Nutrasweet Company*,
   766 F.Supp. 212 (D. Del. 1991) .............................................................................7

Customer defendant Gateway, Inc. ("Gateway") respectfully requests that this lawsuit be stayed with respect to Gateway pending resolution of this case against the LCD product manufacturer co-defendants.

The four patents asserted by plaintiff Guardian Industries Corporation ("Guardian") are directed to specific components of liquid crystal displays ("LCDs"). In this case, Guardian has sued companies that manufacture LCDs or products containing LCDs and customers of these manufacturers. The LCD manufacturers, not LCD customers like Gateway, are the real parties in interest in this case. The LCD manufacturers are the parties with detailed knowledge of the design, structure and manufacture of the allegedly infringing LCDs, and the parties with the information, documentation and knowledge to defend against Guardian's claims. Based on indemnification obligations, they also are responsible to their customers for any potential patent infringement liability. In an attempt to simplify this case, Gateway and other LCD customer defendants now move to stay this case against them, thereby allowing the LCD manufacturers to logically take the lead. Further, staying this case against Gateway and the customer defendants pending resolution of Guardian's claims against the LCD manufacturers would further the interests of justice and litigant efficiency and economy by significantly streamlining and simplifying the issues, discovery and trial in this complex, multi-party case. *See Honeywell Int'l Inc. v. Audiovox Communications Corp.*, C. A. No. 04-1337-KAJ, slip op. at 6-7 (D. Del. May 18, 2005)(Ex. A hereto); *Commissariat A L'Energie Atomique v. Dell Computer Corp.*, C. A. No. 03-484-KAJ, 2004 WL 1554382, at *3 (D. Del. May 13, 2004)(Ex. B hereto).

## NATURE AND STAGE OF THE PROCEEDING

This is Plaintiff Guardian's second lawsuit in this Court alleging infringement of four patents relating to LCDs. In this case, Guardian has alleged that thirty-three defendants infringe U.S. Patent No. 5,570,214, entitled "Normally White Twisted Nematic LCD with Retardation Films on Opposite Sides of Liquid Crystal Material for Improved Viewing Zone," U.S. Patent No. 5,694,187, entitled "LCD Including a Negative Biaxial Retarded on Each Side of The Liquid Crystal Layer," U.S. Patent No. 6,226,065, entitled "Liquid Crystal Display Having High Contrast Viewing Zone Centered in Positive or Negative Vertical Region," and U.S. Patent No. 6,229,588, entitled "Normally White LCD Including First and Second Biaxial Retarders" (referred to collectively herein as "the patents-in-suit"), by making, using, selling or offering for sale LCD products that use a Fuji Wide View (WV) film. Guardian's Complaint and First Amended Complaint fail to specify which products sold by Gateway, or any other defendant, allegedly infringe the patents-in-suit.

In its prior lawsuit ("Guardian I"), Guardian sued seven parties, a number of which were LCD manufacturers, for infringement of the patents-in-suit. Those defendants were Samsung Electronics, Sharp Corporation, Sanyo Electric Company, NEC Corporation, Mitsubishi Electric, NEC-Mitsubishi Electronics Display of America and Viewsonic Corporation. Guardian settled its infringement claims and entered into license agreements with each of these defendants. Guardian also has entered into license agreements with at least five other LCD suppliers (including Toshiba Corporation, Matsushita Electric, Toshiba-Matsushita Display, LG.Phillips and Hitachi Corporation).

2

These licensed LCD manufacturers supply a significant quantity of the LCDs used in products sold by Gateway.

Guardian initially filed its Complaint in this case on January 19, 2005, accusing twenty-two defendants of infringing the patents-in-suit (D.I. 1). On March 31, 2005, Guardian filed its First Amended Complaint (D.I. 50), adding eleven new defendants, which can be grouped into two categories – those that manufacture LCDs and those who do not . .  Combined, the LCD manufacturer defendants and the OEM defendants in this case, and the LCD manufacturers already licensed by Guardian supply the vast majority of the LCD products sold by Gateway.  Since the filing of this lawsuit, at least four LCD manufacturer defendants have settled.

A Rule 16 conference is scheduled for late June.  Discovery has not yet commenced.  No trial date has been set.

## SUMMARY OF ARGUMENT

Gateway does not design or manufacture LCDs.  Instead, Gateway purchases LCDs or LCD-containing products from LCD manufacturers and OEMs, which Gateway then resells to customers.  The vast majority of the LCD products which are sold by Gateway in the United States are supplied by LCD manufacturers or OEMs that have already either been licensed under the patents-in-suit or are co-defendants in this case. Because of their technical knowledge and manufacture of the actual accused LCD devices, the LCD manufacturers  are the real parties in interest in this action and, as such, are in the best position to litigate issues of patent infringement, invalidity and unenforceability.  The Court should stay plaintiff's case against Gateway as Judge Jordan has done in the past with respect to other non-LCD manufacturing defendants in very

3

similar circumstances. *See Honeywell Int'l Inc. v. Audiovox Communications Corp.*,
C. A. No. 04-1337-KAJ, slip op. at 6-7 (D. Del. May 18, 2005) (Ex. A hereto);
*Commissariat A L'Energie Atomique v. Dell Computer Corp.*, C. A. No. 03-484-KAJ,
2004 WL 1554382, at *3 (D. Del. May 13, 2004) (Ex. B hereto). Doing so will simplify
and streamline an already complicated case involving four patents, many defendants
located at different places in the product supply chain and potentially hundreds of
accused products. A stay will also avoid Gateway needlessly incurring litigation
expenses when resolution of Guardian's claims against non-customer defendants will
resolve most if not all of the issues with respect to Gateway.

## STATEMENT OF FACTS

Gateway sells a variety of products including notebook computers,
desktop computers with LCD monitors, and stand alone LCD monitors and televisions.
Gateway does not design or manufacture LCDs. *See* Declaration of Dennis Gruskin
("Gruskin Decl.") at ¶ 5 (Ex. C hereto). Gateway instead purchases LCDs from LCD
manufacturers and incorporates the LCDs into the end-products. (*Id.*) Alternatively,
Gateway purchases products from OEMs that purchase LCDs from LCD manufacturers
and integrate the LCDs with other products to make complete notebook or desktop
computer systems. (*Id.*)

Gateway has limited information regarding the design and structure of the
LCDs that it purchases and then resells. When Gateway purchases LCDs, Gateway
specifies that the LCDs must meet specific performance requirements, such as a
particular viewing angle, refresh rate and brightness. (*Id.* at ¶ 8.) Gateway does not
specify how those requirements must be met and LCD suppliers do not provide Gateway

4

with technical information explaining how the requirements are met or which components, such as polarizers or films, are used in the LCDs. (*Id.*) Gateway also does not know which LCD products it sells, if any, use the Fuji Wide View film referenced by Guardian in its Complaint. (*Id.* at ¶ 9.) Gateway is unable to determine which products it sells, if any, are alleged to fall within the scope of the patents-in-suit. (*Id.*) Despite Gateway's request, Guardian has failed to identify which specific products sold by Gateway are alleged to infringe the patents-in-suit.

Gateway has determined that the vast majority of the LCDs and LCD-containing products that it has sold have been purchased from companies that are either already licensees of the Guardian patents-in-suit or co-defendants in this action.[1]

## ARGUMENT

The Court of Appeals for the Federal Circuit has established that "litigation against or brought by the manufacturer of infringing goods takes precedence over a suit by the patent owner against customers of the manufacturer." *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990); *see also, Honeywell Int'l Inc. v. Audiovox Communications Corp.*, C. A. No. 04-1337-KAJ, slip op. at 6 (D. Del. May 18, 2005) (granting defendant LCD customers' motions to stay in two patent actions brought

---

[1] Gateway purchases LCDs and LCD-containing products from LCD manufacturers and OEMs that are licensed by Guardian, including, Samsung Electronics, Sharp Corporation, NEC Corporation, Mitsubishi Electric, NEC-Mitsubishi Electronics Display of America, LG.Phillips and Viewsonic Corporation. Gateway also purchases LCDs and LCD-containing products from LCD manufacturers and OEM defendants in this case, including, Jean Co., Ltd., Quanta Display, Inc. Lite-On Technology Corporation, Lite-On, Inc., Liteon Trading USA, Inc., MAG Technology Company, Ltd. and MAG Technology USA, Inc. The three Delta defendants (Delta Electronics, Inc., Delta Products Corporation and Delta Electronics (Thailand) Public Company, Ltd.) and Chi Mei Optoelectronics that have settled in this lawsuit also supply Gateway with LCDs and LCD-containing products. (Ex. C, ¶ 7.)

by plaintiff against 35 defendants, including LCD manufacturers and customers) (Ex. A);

*Commissariat A L'Energie Atomique v. Dell Computer Corp.*, C. A. No. 03-484-KAJ,

2004 WL 1554382, at *3 (D. Del. May 13, 2004) (granting all non-LCD manufacturing

defendants' motions to stay in a patent action brought by plaintiff against over 60

defendants, including LCD manufacturers, "OEM/distributors", retailers and retail stores)

("*CEA*") (Ex. B). As the *Katz* Court pointed out, "the manufacturer is the true defendant

in the customer suit. . . . it is a simple fact of life that a manufacturer must protect its

customers, either as a matter of contract, or good business, or in order to avoid the

damaging impact of an adverse ruling against its products." *Katz*, 909 F.2d at 1464

(citations omitted).

Judge Jordan has noted that manufacturers are best suited to litigate

against claims of patent infringement and that it is more efficient to resolve a complicated

case with numerous manufacturer and customer defendants by staying the patentholder's

claims against customer defendants. As explained in *CEA*:

> Because the manufacturers are intimately involved in the
> design, operation, and use of the accused LCD panels, they
> are in the best position to contest the validity and
> infringement of CEA's asserted patents. Resolving these
> issues prior to proceeding against the OEM/distributors and
> retailers would surely simplify this case. If, for example,
> CEA's patents were found invalid or the manufacturers
> would found to be not infringing, then there would be no
> need to proceed against the OEM/distributors or retailers,
> thus conserving judicial resources and expense to the
> parties.

*Commissariat*, 2004 WL 1554382, at *3.

The present case is remarkably similar to *CEA*, which also involved LCD

technology. In that case, the Court faced five different patent infringement actions

6

brought against over 60 defendants consisting of LCD manufacturers,

"OEM/distributors", retailers and retail stores. *Commissariat*, 2004 WL 1554382, at *1.

The Court stayed the case with respect to all defendants except the LCD manufacturers,

allowing the manufacturers, the true parties in interest, to litigate the case. *Id.* at 3.

Likewise, in *Honeywell*, the plaintiff brought two patent actions naming

thirty-five defendants, including LCD manufacturers and LCD customers. *Honeywell*,

C. A. No. 04-1337-KAJ, slip op. at 2-3. This Court stayed the case against the LCD

"non-manufacturer defendants," allowing the case to go forward against the LCD

manufacturers – the parties with the information necessary to defend against the

infringement claims. *Id.* at 9.

In granting a stay in *CEA* and *Honeywell*, the Court considered the

following factors: (1) whether a stay would unduly prejudice or present a clear tactical

disadvantage to the non-moving party; (2) whether a stay will simplify the issues and trial

of the case; (3) whether discovery is completed; (4) whether a trial date has been set.

*Honeywell*, C. A. No. 04-1337-KAJ, slip op. at 6 and *Commissariat*, 2004 WL 1554382,

at *1, citing *United Sweetener USA, Inc. v. Nutrasweet Company*, 766 F. Supp. 212 (D.

Del. 1991). As in *CEA* and *Honeywell*, the first and second factors also favor grant of a

stay to Gateway and the LCD customers. With respect to the third and fourth factors, no

trial date has been set and no discovery has occurred, so these also weigh in favor of a

stay. *United Sweetner*, 766 F. Supp. at 217.

7

I.    **STAYING THE CASE AS TO GATEWAY, AN LCD**
      **CUSTOMER, WOULD SIMPLIFY AND STREAMLINE**
      **THE LITIGATION REGARDLESS OF THE OUTCOME**
      **OF THE CASE WITH RESPECT TO THE DEFENDANT**
      **LCD MANUFACTURERS**

            The vast majority of the LCDs and LCD-containing products sold by

Gateway in the United States are supplied by companies that are either (a) LCD

manufacturers or OEMs that already are defendants in this lawsuit, or (b) LCD

manufacturers that have already licensed the patents-in-suit.  (Ex. C, ¶ 6.)  Thus, Gateway

would have no liability with respect to any of the products purchased from these entities.

            It is clear that staying this action as to Gateway, and the other non-LCD

manufacturing defendants, would streamline and simplify this complex multi-party

action.  The resolution of Guardian's patent infringement claims against the defendant

LCD manufacturers  will resolve all or most of the issues with respect to customer

defendants like Gateway.  *See Katz*, 909 F.2d at 1464; *Honeywell*, C. A. No. 04-1337-

KAJ, slip op. at 6; and, *Commissariat A L'Energie Atomique*, 2004 WL 1554382, at *3.

If Guardian's patents are ultimately found invalid, unenforceable, or not infringed by the

LCDs sold to Gateway by the LCD manufacturers , Gateway would have no liability for

such products.  On the other hand, if Guardian eventually prevails on its claim against the

LCD manufacturers , resulting in a judgment of infringement, satisfaction of that

judgment would absolve Gateway of any liability with respect to the LCD products

purchased from these suppliers.  Similarly, if any of the co-defendant suppliers to

Gateway settle with Guardian and take licenses under the patents-in-suit, as has already

happened with four defendants in this case since the complaint was filed, Gateway

likewise would have no liability with respect to LCD products purchased from these

suppliers.

We note that the pattern established in *Guardian I* indicates that most if not all of the LCD manufacturers in this case are likely to settle and take licenses to the patents-in-suit. Given Guardian's apparent settlement strategy, as evidenced by the settlement and license agreements that Guardian reached with numerous LCD manufacturers before this lawsuit was filed and the four defendant suppliers since this case was filed, there is a substantial likelihood that additional defendant suppliers also will settle with Guardian. It makes little sense for Gateway and other LCD customers to continue in this case and engage in expensive and time-consuming discovery and trial preparation about LCDs products they have virtually no knowledge about when Guardian's settlement strategy might very well eliminate any liability that Gateway may have with respect to such products. In view of the economic reality of the situation, one can wonder whether Guardian has sued all of the non-LCD manufacturing defendants as a device to put settlement pressure on the real parties in interest, the manufacturers.

A stay against Gateway and the other non-LCD manufacturing defendants is also warranted because the LCD manufacturers are better equipped to litigate Guardian's claims. The LCD manufacturers, not their customers, have intimate knowledge of the design, structure and operation of the accused LCD products and possess the technical information and expertise necessary to defend against Guardian's infringement claim. *Commissariat*, 2004 WL 1554382, at *3. Gateway does not manufacture or design LCDs and lacks detailed information about the LCDs and their component parts. (Ex. C, ¶¶ 5, 8.) Furthermore, the defendant LCD manufacturers, not Gateway, have the relevant technical information regarding infringement that Guardian

9

would seek in discovery and thus, any attempt at discovery from Gateway would be a

costly, duplicative and unnecessary endeavor.

Staying the case with respect to Gateway unquestionably simplifies the

case, thus conserving expense to the parties and judicial resources. *Commissariat*, 2004

WL 1554382, at \*3. As this Court explained in *Honeywell*, it would be "impracticable"

and "unwise" to continue this action against LCD customers such as Gateway:

> large-scale litigation like this requires the business and
> strategic legal interests of the plaintiff to cede some ground
> to case management imperatives. It is impracticable to try
> an infringement case against 40 some defendants or third-
> party defendants with many different accused devices, and
> it is unwise to attempt any such thing when liability
> depends exclusively upon infringement being found as to
> an LCD component that the defendants do not manufacture
> and when at least some of the manufacturers of the LCDs
> are before the court and are willing to stand behind their
> products in this litigation.

*Honeywell Int'l, Inc. v. Audiovox Communications Corp.*, C. A. No. 04-1337-KAJ, slip

op. at 7 (D. Del. May 18, 2005).

## II.    GUARDIAN WILL NOT BE PREJUDICED IF A STAY
##        IS ENTERED FOR GATEWAY

If the Court stays this lawsuit with respect to Gateway, Dell and the other

non-LCD manufacturing defendants, the lawsuit would be stayed in favor of the true

defendants in this case—the defendant manufacturers. This simplification of the lawsuit

would not prejudice Guardian. To the contrary, resolution of Guardian's infringement

allegations against the LCD manufacturers will resolve Guardian's claims against

Gateway with respect to products purchased from these defendants, and indeed, will

spare Guardian from engaging in duplicative discovery. *See Honeywell Int'l Inc. v.*

*Audiovox Communications Corp.*, C. A. No. 04-1337-KAJ, slip op. at 9 (D. Del. May 18, 2005) (noting that "a stay would not unduly prejudice Honeywell, it will vastly simplify the issues and trial of the case against the manufacturer defendants") (Ex. A); *Commissariat A L'Energie Atomique*, C. A. No. 03-484-KAJ, 2004 WL 1554382, at *2 (D. Del. May 13, 2004) (finding that a stay for defendant OEM/distributors and retailers would simplify the case going forward and that the plaintiff failed to articulate any prejudice or tactical disadvantage it would suffer as a result of the stay) (Ex. B). Furthermore, in the event that unresolved issues remain after the proceedings against the LCD manufacturers, Guardian may still pursue these claims against Gateway and the other customer defendants.

## III.    GATEWAY WILL BE PREJUDICED IF A STAY IS NOT GRANTED IN ITS FAVOR

Unlike Guardian, Gateway will be seriously prejudiced if a stay is not granted. Gateway will be forced to engage in expensive and time-consuming litigation with respect to products it has limited knowledge about and for which other entities, including numerous co-defendants in this case, bear any liability. Furthermore, it is the LCD manufacturer defendants, not Gateway, that have the relevant technical information, knowledge and expertise to litigate the infringement, validity and enforceability issues and are much better situated to defend against Guardian's claims. As the settlement with the Delta defendants illustrates, it is certain that the discovery obligations imposed on Gateway will be greatly narrowed if not entirely eliminated by waiting to see what if anything is left of the case against Gateway once the dust settles on litigation with LCD manufacturers. It is equally certain that Gateway will be forced to waste significant

resources on discovery if it is required to litigate its case concurrently with the litigation against the LCD manufacturers.

### CONCLUSION

For the reasons set forth above, Gateway respectfully requests that the case against it be stayed pending resolution of the proceedings against the LCD manufacturer defendants.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

By: _____

Robert J. Gunther, Jr.
Kurt M. Rogers
LATHAM & WATKINS LLP
885 Third Avenue
New York, N.Y. 10022
Tel.: (212) 906-1200

Dated: June 8, 2005

Richard L. Horwitz (#2246)
David E. Moore (#3983)
Hercules Plaza, 6th Floor
1313 N. Market Street
P.O. Box 951
Wilmington, DE 19899
Tel.: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendant Gateway, Inc.*

685622

12

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on June 8, 2005, the attached document

was hand delivered to the following persons and was electronically filed with the Clerk of

the Court using CM/ECF which will send notification of such filing(s) to the following

and the document is available for viewing and downloading from CM/ECF:

Richard K. Herrmann
Mary B. Matterer
Morris James Hitchens & Williams LLP
222 Delaware Avenue, 10th Floor
Wilmington, DE 19801

Robert W. Whetzel
Richards, Layton & Finger
One Rodney Square
P.O. Box 551
Wilmington, DE 19899-0551

Josy W. Ingersoll
Young, Conaway, Stargatt & Taylor, LLP
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899-0391

Gerald M. O'Rourke
Connolly Bove Lodge & Hutz LLP
The Nemours Building
1007 North Orange Street
P.O. Box 2207
Wilmington, DE 19899

Steven J. Balick
Ashby & Geddes
222 Delaware Avenue
P.O. Box 1150
Wilmington, DE 19899

William J. Marsden, Jr.
Fish & Richardson, P.C.
919 N. Market Street, Suite 1100
P.O. Box 1114
Wilmington, DE 19899-1114

Matthew W. King
Richards, Layton & Finger
One Rodney Square
P.O. Box 551
Wilmington, DE 19899-0551

I hereby certify that on June 8, 2005, I have Federal Expressed the documents to the following non-registered participants:

Bryan S. Hales
Craig D. Leavell
Meredith Zinanni
Eric D. Hayes
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, IL  60601

Peter J. Wied
Alschuler Grossman Stein & Kahan LLP
1620 26gh Street, 4th Floor, N Tower
Santa Monica, CA  90404-4060

Roderick B. Williams
Avelyn M. Ross
Vinson & Elkins
2801 Via Fortuna, Suite 100
Austin, TX  78746-7568

Eric L. Wesenberg
Kai Tseng
Rowena Young
Orrick, Herrington & Sutcliffe LLP
1000 Marsh Road
Menlo Park, CA 94025-1015

Jeffrey K. Sherwood
Akin Gump Strauss Hauer & Feld LLP
Robert S. Strauss Building
1333 New Hampshire Avenue, N.W.
Washington, DC 20036-1564

Teresa M. Corbin
Howrey LLP
525 Market Street, Suite 3600
San Francisco, CA  9410534

Robert C. Weems
Baum & Weems
58 Katrina Lane
San Anselmo, CA  94960

Kurt M. Rogers
Latham & Watkins LLP
885 Third Avenue
Suite 1000
New York, NY 10022-4834

E. Robert Yoches
Laura P. Masurovsky
Finnegan, Henderson, Farabow,
    Garrett & Dunner, L.L.P.
901 New York Avenue, N.W.
Washington, DC  20001

By: _____
    Richard L. Horwitz
    David E. Moore
    Hercules Plaza, 6th Floor
    1313 N. Market Street
    Wilmington, Delaware  19899-0951
    (302) 984-6000
    rhorwitz@potteranderson.com
    dmoore@potteranderson.com

679634

2