IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| GUARDIAN INDUSTRIES CORP., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> DELL, INC.; GATEWAY, INC.; HEWLETT-PACKARD CO.; ) <br> ACER INC.; ACER AMERICA CORP.; ) <br> AOC INTERNATIONAL; ENVISION PERIPHERALS, INC.; ) <br> TPV TECHNOLOGY, LTD.; TPV INTERNATIONAL (USA), ) <br> INC.; AU OPTRONICS CORP.; AU OPTRONICS ) <br> CORPORATION AMERICA A/K/A AU OPTRONICS ) <br> AMERICA, INC.; BENQ CORP.; BENQ AMERICA CORP.; ) <br> CHUNGHWA PICTURE TUBES, LTD. A/K/A CHUNGHWA ) <br> PICTURE TUBES CO.; TATUNG CO.; ) <br> TATUNG CO. OF AMERICA, INC.; BOE HYDIS ) <br> TECHNOLOGY CO., LTD.; BOE HYDIS AMERICA INC.; ) <br> CHI MEI OPTOELECTRONICS; COMPAL ELECTRONICS, ) <br> INC.; HANNSTAR DISPLAY CORP.; JEAN CO., LTD.; ) <br> LITE-ON TECHNOLOGY CORP.; LITE-ON, INC. A/K/A ) <br> LITEON TRADING USA, INC.; MAG TECHNOLOGY CO., ) <br> LTD.; MAG TECHNOLOGY USA, INC.; PROVIEW ) <br> INTERNATIONAL HOLDINGS, LTD.; PROVIEW ) <br> TECHNOLOGY, INC.; PROVIEW ELECTRONICS CO., LTD.; ) <br> and QUANTA DISPLAY, INC. ) <br> ) <br> Defendants. ) <br> ) | C.A. No.: <br> 05-27-SLR <br><br> Jury Trial <br> Demanded |

## GUARDIAN'S OPPOSITION TO THE MOTIONS TO STAY OF DELL, GATEWAY, AND LITE-ON

| | |
|---|---|
| Richard K. Herrmann (I.D. No. 405) <br> Mary B. Matterer (I.D. No. 2696) <br> MORRIS JAMES HITCHENS & WILLIAMS <br> 222 Delaware Avenue, 10th Floor <br> Wilmington, Delaware 19801 <br> 302.888.6800 <br> rherrmann@morrisjames.com <br> mmatterer@morrisjames.com | Bryan S. Hales <br> Craig D. Leavell <br> Meredith Zinanni <br> Eric D. Hayes <br> KIRKLAND & ELLIS LLP <br> 200 East Randolph Drive <br> Chicago, Illinois 60601 <br> 312.861.2000 |

*Counsel for Plaintiff Guardian Industries Corp.*

Dated: June 21, 2005

# TABLE OF CONTENTS

BACKGROUND ..................................................................................................................1

ARGUMENT......................................................................................................................4

    I.    Guardian Will Be Prejudiced And Disadvantaged By A Stay................................4

        A.    Discovery Will Be Required From The Movants. ......................................5

        B.    A Stay Would Only Foster Additional Litigation and Reduce Efficiency. ...............................................................................6

        C.    The Movants Are Not "Pure Customers." .................................................8

    II.    The Movants Are Not Prejudiced By Continuing In This Case. ..........................9

        A.    The Movants Are Best Served By Litigating Infringement And Validity Issues With The LCD Module Manufacturers......................9

        B.    This Case Will Not Produce Duplicative Discovery. ...............................11

    III.    A Stay Will Not Simplify This Case....................................................................11

        A.    The Proper Trial Management Of This Case Should Be Determined After Discovery...................................................................11

        B.    The Issues Of This Case Will Not Be Simplified If A Stay Is Granted. ................................................................................................12

    IV.    It Weighs In Guardian's Favor, Not The Movants', That Discovery Has Not Commenced And A Trial Date Has Not Been Set. ..................................13

CONCLUSION.................................................................................................................13

# TABLE OF AUTHORITIES

**Cases**

*Air Products and Chemicals, Inc. v. MG Nitrogen Services L.L.C.*,
    133 F. Supp. 2d 354, 357 (D. Del. 2001) ................................................................ 8

*Argos v. Orthotec LLC*,
    304 F. Supp.2d 591, 598 (D. Del. 2004) ................................................................ 4

*Corning Glass Works v. U.S.*,
    220 Ct. Cl. 605 (1979) .......................................................................................... 10

*Kahn v. General Motors Corp.*,
    889 F.2d 1078, 1083 (Fed. Cir. 1989) ............................................................ 4, 6, 8

*Landis v. North American Co.*,
    299 U.S. 248, 254-55 (1936) .................................................................................. 4

*Refac Int'l, Ltd. v. IBM*,
    790 F.2d 79, 81 (Fed. Cir. 1986) .......................................................................... 10

Guardian opposes the Motions to Stay this case filed by Dell, Gateway, and Lite-On (collectively, "the Movants") because, contrary to the Movants' assertions, the LCD module manufacturers cannot provide all the information and relief to which Guardian is entitled. The Movants are carrying out activities in the United States that are accused of infringement, and as direct infringers, the information they have and relief they can provide is key to Guardian's ability to enforce its patents. A stay would not simplify the issues before the Court, but rather would complicate the discovery process and unduly prejudice Guardian's attempt to obtain full recovery for infringement of its patents.

## BACKGROUND

Guardian filed this suit on January 19, 2005 and later added several parties by amendment, naming 33 defendants in total. (D.I. 1, 50.) Many of the defendants are related companies, such that a total of 19 "defendant groups" were named as parties to this action. Four defendant groups, both LCD module manufacturers and original equipment manufacturers ("OEMs"), have already settled and taken licenses to Guardian's patents, leaving a total of 15 defendant groups in this case. As of June 20, 2005, seven of the eleven "non-manufacturing" defendant groups remaining in the case have moved to stay the case against the "non-manufacturing" defendants, with two more defendant groups expected to so move today. (D.I. 109, 111, 113, 114, 122, 125.) A chart illustrating the defendant groups and their status can be found at Exhibit A.

All defendants have been served,[1] and all but three defendant groups (Hannstar, BOE HYDIS, and the TPV entities) have answered. BOE HYDIS, Hannstar and Quanta have thus far reserved the right to challenge the personal jurisdiction of this Court over them. (D.I. 70, 83, 89.) All three of these parties are LCD module manufacturers.

The patents-in-suit all relate to the use of retardation films to improve the viewing angle of LCD monitors. Guardian asserted the same patents in this Court in C.A. No. 1:03-cv-00934-SLR, filed October 7, 2003 ("Guardian I"). That action was terminated on February 28, 2005, after all 14 defendants (7 defendant groups) settled and took licenses to the patents. No stay was entered in Guardian I, yet the litigation was resolved without extensive discovery or expense before fact discovery had closed and before expert discovery was conducted.

There are generally three stages in the LCD supply chain: (1) LCD module manufacturers, which manufacture the LCD module, (2) OEMs, which incorporate the LCD module into an LCD monitor, and (3) resellers, which sell the LCD monitor to consumers. (D.I. 110 at 1; D.I. 112 at 3; Ex. B.) However, one company may have operations at more than one stage of the supply chain; for example, Dell and Gateway identify themselves as both OEMs and resellers. (D.I. 110 at 3; D.I. 112 at 3.) Also, some of the defendants in different stages of the supply chain are related, such as Chunghwa Picture Tubes ("CPT") and Tatung. (Ex. C.) Unlike Honeywell, Guardian has named LCD module manufacturers and OEMs, as well as resellers, as defendants.

---

[1] Guardian has been informed that AOC International ceased to be in the monitor business in December 1997, and never sold LCD monitors. Guardian expects to stipulate to a dismissal without prejudice of AOC International from this case.

(*See* Ex. D at 25:8-21.) Guardian wants all LCD module manufacturers to remain in this case, but in light of their potential challenges to personal jurisdiction, Guardian cannot be certain that BOE HYDIS, Hannstar and Quanta will remain present.

The resellers are the driving force in the market, as they set the specifications and create demand for their LCD monitors. (D.I. 112 at 4.) OEMs and LCD module manufacturers respond by manufacturing monitors that meet the specifications required by the resellers—a key requirement being wide viewing angles. (*Id.*) Although the resellers may not specify the manner by which wide viewing angles are achieved, their demand for this feature drives the use of the technology claimed in the patents-in-suit.

As Guardian told the Court and the Guardian I defendants, and as Guardian has told the defendants in this case, the only retardation films that Guardian is aware are used commercially in the LCD monitors at issue are Fuji Wide View films. (*See* Ex. E.) Thus, the infringement issues for all parties and all accused products are largely the same. As in this case, the defendants in Guardian I were both LCD module manufacturers and resellers. They raised trial management issues such as the need for and order of separate trials during the scheduling discussions in that case. As a result, the Court in Guardian I added to the Scheduling Order a Status Conference to be held shortly before trial, at which time such trial management issues would be decided. (Ex. F ¶ 3, Ex. G.)

A scheduling conference with the Court is scheduled for June 29, 2005. In the current draft of the Proposed Scheduling Order, the parties have proposed that discovery begin the first week of July 2005. The Proposed Scheduling Order also includes a Status Conference roughly two months before the proposed trial date, as was added to the

3

Scheduling Order in Guardian I, at which time trial management issues will be determined. No party has objected to that Status Conference in this case. (Ex. F ¶ 7.)

**ARGUMENT**

The Motions to Stay should be denied because a stay will prejudice Guardian's ability to get complete discovery and relief, without simplifying the issues in this case. Staying this case would result in inefficiencies by complicating the discovery process and increasing the likelihood of multiple trials.

Courts have the inherent power to manage their dockets, balancing the competing interests of the courts, counsel, and litigants. *Landis v. North American Co.*, 299 U.S. 248, 254-55 (1936). The decision whether to stay this case is firmly within the discretion of the Court. *Argos v. Orthotec LLC*, 304 F. Supp.2d 591, 598 (D. Del. 2004). To determine whether a stay is appropriate, this Court should consider: (1) whether Guardian will be unduly prejudiced or tactically disadvantaged by a stay; (2) whether the issues in question and trial of the case will be simplified by a stay; and (3) whether discovery has been completed and a trial date set. *Id.* "The party requesting a stay 'must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else.'" *Kahn v. General Motors Corp.*, 889 F.2d 1078, 1083 (Fed. Cir. 1989) (quoting *Landis*, 299 U.S. at 255). Guardian will be prejudiced by a stay, and the Movants have not shown clear hardship or inequity. Accordingly, the Motions to Stay should be denied.

I.  **Guardian Will Be Prejudiced And Disadvantaged By A Stay.**

The Movants argue that Guardian will not be prejudiced or disadvantaged by a stay because it will get all the discovery and relief it needs from the LCD module manufacturers. This is not the case. Guardian requires discovery from the Movants in

4

order to, among other things, identify the infringing LCD modules that are sold in the U.S. The Movants are likely the only source of that information. Additionally, if Guardian is successful but only the LCD module manufacturers are enjoined, Guardian would be required to conduct continuing, piecemeal litigation in order to recover for the Movants', and other "non-manufacturing" defendants', infringement.

### A.   Discovery Will Be Required From The Movants.

The Movants suggest that the OEMs and resellers in this case should be stayed while the case against the LCD module manufacturers proceeds.[2] (D.I. 110 at 1; D.I. 112 at 1; D.I. 113 at 2.) Yet in Guardian I, except for a small minority of direct sales, the LCD module manufacturers asserted they did not know which of their accused products reached the U.S. (Ex. F ¶ 4.) The LCD module manufacturers in this case, which are Taiwanese and Korean corporations, may similarly argue that they sell LCD modules to OEMs outside the U.S. and do not know which of their modules are then imported and sold in the U.S. If all activity against the Movants is stayed, Guardian will be forced to pursue costly and time-consuming international discovery against those foreign OEMs to which the LCD modules are sold in order to determine which modules reach the U.S.

The Movants, on the other hand, can readily provide that information through discovery. Dell and Gateway, for example, can readily identify the LCD monitors that they sell in the U.S. And OEMs such as Lite-On can readily identify the LCD monitors that they sell in the U.S. or to entities in the U.S. The Court should not stay the case against OEMs and resellers that have information showing direct infringement, in favor

---

[2]   Guardian notes that not all OEM and reseller defendants have moved for a stay, and the OEMs Acer and Compal have not indicated they intend to so move.

of complicated, expensive, time-consuming international discovery from third parties. As Judge Jordan said in the *Honeywell* case, the first front in the war is finding out "who is doing the manufacturing and supplying for who and for what products." (Ex. D at 45:25-46:6 (stating plaintiffs will be allowed some discovery from all parties).) The Movants know where their LCD monitors are sold and who supplied them. Guardian needs discovery of that information.

> B.  **A Stay Would Only Foster Additional Litigation and Reduce Efficiency.**

To provide Guardian full recovery for the infringement of its patents, the case should proceed against all named parties. A stay as to resellers in favor of a suit against the manufacturers is inappropriate where there may be additional suppliers of the infringing products. *See Kahn*, 889 F.2d at 1082.

Here, Gateway and Lite-On admit that not all of their suppliers are named in this lawsuit or licensed by Guardian. (D.I. 112, Ex. C ¶ 6 (stating the "vast majority", but not all, of Gateway's suppliers were purchased from co-defendants or licensees); D.I. 113, Ex. A ¶ 6 (naming as "other LCD suppliers" IBM Singapore and Fujitsu Microelectronics Asia, among others).) Dell raises the possibility that "numerous LCD module manufacturers" may be impleaded through third-party practice, but does not identify any such LCD module manufacturer. (D.I. 110 at 4.) And there is no guarantee that there will not be a new participant in the industry in the future, whether an LCD module manufacturer or OEM. Guardian should not be required to pursue additional litigation in the future against these unnamed and, in some cases, unknown entities when Dell, Gateway, and Lite-On are in front of the Court now and can answer for their direct infringement of Guardian's patents.

In addition, LCD module manufacturers BOE HYDIS, Hannstar, and Quanta have reserved the right to challenge the personal jurisdiction of this Court over them. (D.I. 70, 83, 89.) They have not, as Seiko Epson did in the *Honeywell* case, assured Guardian that they will stand behind their products and customers. (*See* Ex. D at 16:21-17:2.) Again, it does not make sense to require a second stage of litigation against the OEMs and resellers should any of their suppliers not be captured by this litigation, when the direct infringers of Guardian's patents are before the Court now. This is particularly true as the infringement issues regarding the accused products are the same, as a result of their ubiquitous use of Fuji Wide View films.

The named OEMs and resellers account for a large percentage of the unlicensed U.S. LCD monitor market, and thus an injunction against those entities in addition to the LCD module manufacturers provides relief to Guardian for a majority of the U.S. market. Importantly, such an injunction would protect Guardian regardless of whether there are new manufacturer or OEM entrants to the market, manufacturers or OEMs over which this Court may lack jurisdiction, or unnamed OEMs. The impact is significant— according to industry research group DisplaySearch, there are, for example, over 30 OEMs. (Ex. B.) Some of them are small enough that pursuit through additional lawsuits would be inefficient and needlessly prejudicial to Guardian.

In the Honeywell case cited by the Movants, Judge Jordan noted that Honeywell had focused its efforts *solely* on the "non-manufacturing" defendants, ignoring the LCD module manufacturers. (Ex. D at 43:23-44:15.) Guardian has not done this. Rather, Guardian has named both manufacturing and non-manufacturing parties in order to efficiently protect its interests with minimal litigation. All of the defendants—not just the

LCD module manufacturers—are infringing Guardian's patents, and Guardian should not have its ability to achieve relief prejudiced by a stay of the case against the direct infringers that are located in the U.S and dealing directly with the U.S.

### C. The Movants Are Not "Pure Customers."

The Movants claim they are "pure customers," such that the case against them would be subject to the customer suit exception, which favors a case against a manufacturer over a case against a customer. (D.I. 110 at 4.) But the customer suit exception applies only when an action against the manufacturer would "resolve all charges against the customers in the stayed suit, including liability for damages." *Kahn*, 889 F.2d at 1081. As discussed above, that is not the case here. Moreover, where the alleged customer is also the direct infringer, the customer suit exception does not apply. *Air Products and Chemicals, Inc. v. MG Nitrogen Services L.L.C.*, 133 F. Supp. 2d 354, 357 (D. Del. 2001). The Movants are entities offering these products for sale and selling them in or to the U.S. They are the direct infringers, and the customer suit exception does not apply.

Furthermore, by the Movants' own admissions, they are not simply customers, but also purchase the LCD modules and incorporate them into LCD monitors. (D.I. 110 at 3; D.I. 112 at 3; D.I. 113 at 1.) The Movants' briefs also demonstrate that the lines between LCD module manufacturer, OEM, and reseller are not clear cut. For example, CPT, an LCD module manufacturer, is a subsidiary of Tatung, an OEM. (Ex. C.) Dell calls itself a customer, yet its wholly-owned subsidiary, Dell Global Procurement Malaysia, is identified as a supplier by Lite-On. (D.I. 113, Ex. A ¶ 6.) Lite-On, an OEM, identifies Acer as one of its suppliers, yet Dell labels Acer as another customer defendant. (D.I.

8

113, Ex. A ¶ 6; D.I. 110 at 3.) It is prejudicial to Guardian to ask it to resolve this conflicting information by means other than discovery from all defendants, including the Movants.

## II.  The Movants Are Not Prejudiced By Continuing In This Case.

The Movants suffer no more, and likely less, "prejudice" than any other defendant called to answer for its allegedly infringing activities. In fact, the Movants are better served by litigating now, with the LCD module manufacturers, than they would be by litigating later on their own.

### A.  The Movants Are Best Served By Litigating Infringement And Validity Issues With The LCD Module Manufacturers.

The Movants all claim that they lack the technical information necessary to defend against Guardian's claims of infringement. (D.I. 110 at 4, 9; D.I. 112 at 9-10; D.I. 113 at 1.) Yet not only did each assert non-infringement as an affirmative defense, they also asserted counterclaims of non-infringement. (D.I. 63, 74, 81.) Assuming they had a good faith basis to make such assertions, they must either have sufficient information about the LCD modules, or have relationships with their suppliers such that they were able to acquire sufficient information. There is no reason why they cannot defend themselves in this case under either scenario.

The Movants also raised invalidity affirmative defenses and counterclaims. (D.I. 63, 74, 81.) Asserting invalidity does not require detailed technical information about the accused products, but rather publicly available prior art. There is no legitimate basis for the Movants to argue they are unable to address issues regarding the validity and enforceability of the patents-in-suit, having made such allegations by counterclaim.

9

In any event, if the Movants do lack the necessary information about their products to defend against Guardian's claims, they are better served by litigating these issues with the LCD module manufacturers that do have the information. At a minimum, the Movants will have ready access to discovery from the LCD module manufacturers, and more likely, cooperation from the LCD module manufacturers. Or, if their interest is to have the LCD module manufacturers take the laboring oar in defense, the Movants can stand by while the LCD module manufacturers press the defense, as some defendants did in Guardian I. (*See* Ex. F ¶ 5.) At least one Movant has claimed that the OEMs and resellers are indemnified by the LCD module manufacturers. (D.I. 112 at 1.) In sum, to the extent the Movants want to put on a defense to these claims, in particular with regard to those products supplied by entities not parties to this case, the time to do it is now.

Alternatively, the Movants should be bound by their statements that they are unable to defend themselves against Guardian's claims, and thus be bound by any decision adverse to the LCD module manufacturers, just as they seek to benefit should the LCD module manufacturers prevail on validity or infringement grounds. (*See,* D.I. 110 at 7; D.I. 112 at 8; D.I. 113 at 2.) If the case against them is stayed, and the LCD module manufacturers are found to infringe, the Movants should not be given a second bite at the apple by which they can challenge the findings of the Court as to infringement and the validity of the patents. *See Refac Int'l, Ltd. v. IBM*, 790 F.2d 79, 81 (Fed. Cir. 1986) (district court bound stayed defendants in stay order to any injunction issued against manufacturers); *Corning Glass Works v. U.S.*, 220 Ct. Cl. 605 (1979) (resellers bound by decision in earlier case). Entering a stay, only to have later litigation or litigations on the same infringement issues regarding LCD monitors with Fuji Wide View

film, or the same invalidity and unenforceability issues, would be a needless waste of resources.

### B.  This Case Will Not Produce Duplicative Discovery.

The Movants also wrongly argue that they will be prejudiced because any discovery they can provide would be duplicative. (*See* D.I. 110 at 8; D.I. 112 at 10.) As discussed above, only the Movants have full information regarding the sales of relevant LCD monitors in the U.S. As for technical information about the LCD modules, the Movants claim that they do not have any information about the products. If true, there will be no duplicative discovery. If not, the information the Movants possess is relevant, not duplicative. The Movants are not "prejudiced" by fulfilling their discovery obligations.

### III.  A Stay Will Not Simplify This Case.

Contrary to the statements made by the Movants, a stay will not simplify the issues in this case. The proper management of trial can be determined closer to trial, when the remaining parties are known and the full scope of the issues to be tried is understood. Discovery involving only Guardian and the LCD module manufacturers will not simplify the case, but rather will leave gaps in the information necessary to thoroughly address the issues and efficiently manage the schedule of trial in this case.

### A.  The Proper Trial Management Of This Case Should Be Determined After Discovery.

The Proposed Scheduling Order includes a Status Conference roughly two months before the trial date. At that time, the Court will determine whether separate trials are appropriate, and if so, the order in which the defendants' trials should proceed. The Court took this approach in Guardian I. (D.I. 43 ¶ 11 from C.A. No. 1:03-cv-00934-

SLR.) That there may be several defendants remaining for trial, or numerous products in dispute, is not sufficient reason to stay all discovery from "non-manufacturer" defendants—especially given that the products at issue will have Fuji Wide View film in common. The sensible course is to proceed against all defendants now, and make trial management decisions at the Status Conference.

As Gateway noted of the Guardian I case, Guardian has resolved its disputes with all of the parties from Guardian I, as well as several parties that were not named in any lawsuit. (D.I. 112 at 9.) Already, four defendants in this case have settled and joined Guardian's list of licensees. (Ex. F ¶ 8.) If history is any indication, additional parties may take licenses. Each LCD module manufacturer or OEM that takes a license has the potential to remove products of the Movants from issue, but the extent to which that happens can only be known if the Movants are subject to discovery in the case. Thus, denying the Movants' motion will allow the parties to develop a record that will be relevant at the trial management Status Conference.

> **B.    The Issues Of This Case Will Not Be Simplified If A Stay Is Granted.**

The Movants also argue that Guardian's "failure to identify the specific 'LCDs and related products' accused of infringement" supports a stay. (D.I. 110 at 3-4; D.I. 112 at 5.) But that puts the cart before the horse. The Movants omit that Guardian has specified that the accused products are LCD devices that use Fuji Wide View film. (Ex. E.) Guardian has also offered to help identify those products that likely include film. (*Id.*) But given the large number and variety of models sold by the Movants, including changes in product offerings over time, Guardian cannot, without discovery from defendants, specify by model number all of the accused products. That Movants have not

yet provided this information cannot justify their attempt to prevent Guardian from getting it.

It is worth noting that in Guardian I, the resellers were able to identify, either on their own or with help from Guardian, which of their products contained Fuji Wide View film. (Ex. F ¶ 6.) That was true notwithstanding that the resellers in Guardian I initially took the same position as the resellers here—that it was not possible for them to do so. (*Id.*)

### IV. It Weighs In Guardian's Favor, Not The Movants', That Discovery Has Not Commenced And A Trial Date Has Not Been Set.

The Movants argue that it weighs in favor of a stay that discovery has not started and a trial date has not been set, but they offer no support for that position. Rather, as shown above, it weighs against a stay. Only with discovery of the Movants can the scope of the disputes be framed. And the trial management issues are best resolved at the proposed Status Conference, after discovery has been taken of all parties.

### CONCLUSION

For all of the foregoing reasons, Guardian respectfully requests that this Court deny the Motions to Stay of Dell, Gateway, and Lite-On.

13

Dated: June 21, 2005

*[signature]*

Richard K. Herrmann (I.D. No. 405)
Mary B. Matterer (I.D. No. 2696)
MORRIS JAMES HITCHENS & WILLIAMS
222 Delaware Avenue, 10th Floor
Wilmington, Delaware 19801
302.888.6800
rherrmann@morrisjames.com
mmatterer@morrisjames.com

Bryan S. Hales
Craig D. Leavell
Meredith Zinanni
Eric D. Hayes
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

*Counsel for Plaintiff Guardian Industries Corp.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 21st day of June, 2005, I electronically filed the foregoing document, **GUARDIAN'S OPPOSITION TO THE MOTIONS TO STAY OF DELL, GATEWAY AND LITE-ON**, with the Clerk of the Court using CM/ECF which will send notification of such filing to the following:

Richard L. Horwitz, Esq.
David E. Moore, Esq.
Potter Anderson & Corroon
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801

Robert W. Whetzel, Esq.
Matthew W. King, Esq.
Richards, Layton & Finger, P.A.
One Rodney Square
Wilmington, DE 19801

Gerard M. O'Rourke, Esq.
Connolly Bove Lodge & Hutz LLP
1007 North Orange Street, P.O. Box 2207
Wilmington, Delaware 19899-2207

Josy W. Ingersoll, Esq.
Young, Conaway, Stargatt & Taylor LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801

Additionally, I hereby certify that on the 21st day of June, 2005, the foregoing document was served via email on the following non-registered participants:

Daniel T. Shvodian, Esq.
Teresa M. Corbin, Esq.
Howrey LLP
301 Ravenswood Avenue
Menlo Park, CA 94025-3434
shvodiand@howrey.com
corbint@howrey.com

Roderick B. Williams, Esq.
Avelyn M. Ross, Esq.
Vinson & Elkins
2801 Via Fortuna, Suite 100
Austin, TX 78746-7568
rickwilliams@velaw.com
aross@velaw.com

York M. Faulkner, Esq.
Finnegan Henderson Farabow Garrett & Dunner
Two Freedom Square
11955 Freedom Drive
Reston, VA 20190-5675
york.faulkner@finnegan.com

Peter J. Wied, Esq.
Alschuler Grossman Stein & Kahan LLP
1620 26th Street, Fourth Floor, N Tower
Santa Monica, CA 90404-4060
pwied@agsk.com

Robert J. Gunther, Jr., Esq.
Kurt M. Rogers
Latham & Watkins
885 Third Avenue
New York, NY 10022
robert.gunther@lw.com
kurt.rogers@lw.com

Jeffrey A. Snyder, Esq.
Thoits, Love, Hershberger & McLean
245 Lytton Avenue, Suite 300
Palo Alto, CA 94301
jsnyder@thoits.com

Robert C. Weems, Esq.
Baum & Weems
58 Katrina Lane
San Anselmo, CA 94960
rcweems@comcast.net

E. Robert Yoches, Esq.
Finnegan Henderson Farabow Garrett & Dunner
901 New York Avenue, NW
Washington, DC 20001
bob.yoches@finnegan.com

_____
Richard K. Herrmann (I.D. No. 405)
Mary B. Matterer (I.D. No. 2696)
MORRIS, JAMES, HITCHENS & WILLIAMS
222 Delaware Avenue, 10th Floor
Wilmington, Delaware 19801
302.888.6800
rherrmann@morrisjames.com
mmatterer@morrisjames.com

*Counsel for Plaintiff Guardian Industries Corp.*