# EXHIBIT   A

**Guardian v. Dell et al.: Status of Defendants as of 6/21/05**

**Defendants who have moved to stay:**

| Defendant | Date Motion Filed | Date Response Due | Date Reply Due |
|---|---|---|---|
| 1. Dell | 6/7/05 | 6/21/05 | 6/28/05 |
| 2. Gateway | 6/8/05 | 6/22/05 | 6/29/05 |
| 3. Lite-On Tech. Lite-On, Inc. | 6/10/05 | 6/24/05 | 7/1/05 |
| 4. Tatung Tatung of America | 6/14/05 | 6/28/05 | 7/6/05 |
| 5. Jean | 6/14/05 | 6/28/05 | 7/6/05 |
| 6. Hewlett-Packard | 6/17/05 | 7/1/05 | 7/11/05 |
| 7. TPV Tech. TPV Int'l (USA) Envision Peripherals AOC Int'l | 6/20/05 | 7/5/05 | 7/12/05 |
| 8. MAG Tech. MAG Tech. USA | Anticipated 6/21/05 | Anticipated 7/6/05 | Anticipated 7/13/05 |
| 9. Proview Int'l Proview Tech. Proview Electronics | Anticipated 6/21/05 | Anticipated 7/6/05 | Anticipated 7/13/05 |

**Defendants who have settled:**

10. AU Optronics
    AU Optronics America

11. BenQ Corp.
    BenQ America Corp.

12. Chi Mei Optoelectronics

13. Delta Electronics
    Delta Products
    Delta Electronics (Thailand)

**Other Defendants:**

14. Acer
    Acer America

15. BOE HYDIS Tech. Co.
    BOE HYDIS America

16. Chunghwa Picture Tubes

17. Compal Electronics

18. Hannstar Display

19. Quanta Display

# EXHIBIT   B

**DisplaySearch**

KEY:  | LCD Manufacturer | OEM | Reseller |

Q204 Monitor Value Chain Spreadsheet

| Monitor OEM Maker | NEC PC | NEC-MITSUBISHI | FUJITSU | SONY | EIZO NANAO | HITACHI | SHARP | SAMSUNG | LGE | Corea | IMAGE QUEST | IMRI | PHILIPS | BENQ | AMTRAN | CORETRONIC | TATUNG | COMPAL | LITEON | DELTA | Techview | CMV | JEAN | AOC | SAMPO | PROVIEW | GVISION | NEXGEN | TAIWAN OTHERS | WW OTHERS | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ADI | | | 11.3 | 13.0 | | | | | | | | | | | 5.0 | | | | | | | | | 2.0 | | | | | | | 31.3 |
| Fujitsu | | | 9.7 | 15.0 | | | | | 5.0 | | | | | 2.0 | 49.5 | 12.0 | | | | 1.0 | 10.0 | 13.0 | 3.0 | 5.0 | | 5.0 | | | | | 135.2 |
| Hitachi | | 1.0 | | 20.0 | 18.0 | | 4.0 | | | | | | | | 15.0 | | 10.0 | | | | | | | | | | | | | 2.0 | 70.0 |
| NEC | 13.5 | 21.5 | | | | | | | | | | | | | | | | | | | | | | 12.0 | | | | | | | 47.0 |
| Sharp | | | | | | | 25.0 | 10.0 | | | | | | | 5.0 | | | | | | | | | 5.0 | 10.0 | | | | | 8.0 | 63.0 |
| Torisan | | | | | | | | 92.0 | | | | | | | 5.0 | | | | 5.0 | | | | | 15.0 | | 10.0 | | | | 3.0 | 125.0 |
| BOE_Hydis | | | | | | | 10.0 | 7.6 | 5.0 | | 5.0 | 15.1 | | | | 20.0 | 25.0 | | | 5.0 | | | | 40.0 | | 10.0 | | | | 4.1 | 146.8 |
| LG.Philips | | 37.5 | | | 16.0 | | 1.0 | 10.0 | 450.0 | 1.0 | 50.0 | 5.0 | 276.5 | 143.5 | 15.5 | 3.0 | | | 22.0 | 35.0 | 5.5 | 33.5 | | 115.0 | 10.5 | 5.0 | | | 20.5 | 26.0 | 1282.0 |
| Samsung | 4.0 | 20.0 | 25.0 | 25.0 | | | 7.0 | 580.0 | 18.0 | | 54.0 | 6.0 | | 113.0 | 28.0 | 10.0 | 5.0 | 34.0 | 190.0 | 10.0 | | 3.0 | | 191.0 | 4.0 | 50.0 | 15.0 | | 20.0 | 56.0 | 1468.0 |
| AU_Optronics | | | 27.0 | | | | | | 30.0 | 15.0 | | | 8.0 | 357.0 | 20.0 | 51.0 | 5.0 | | 145.0 | 10.0 | 5.0 | | | 94.0 | 24.0 | 70.0 | 21.0 | | 26.7 | 16.7 | 960.3 |
| Chi Mei | | | | | | | | 26.0 | 8.0 | | | | 13.0 | 25.0 | 20.0 | 35.0 | | | 50.0 | 21.0 | | 30.0 | | 17.0 | | 25.7 | 7.0 | 238.0 | 10.0 | 6.0 | 531.7 |
| IDTech | | | | 1.0 | | | | | | | | | 10.0 | | | | | 1.0 | | | | | | | | | | | 2.5 | 0.9 | 14.4 |
| CPT | | 25.0 | | | | | | | | | | | 30.0 | 22.0 | 33.0 | 55.0 | 15.0 | 16.0 | 125.0 | 15.0 | 75.0 | 22.0 | 125.0 | 190.0 | | 35.0 | | | 32.3 | | 815.3 |
| HannStar | | | | | | | | | 20.0 | | | | 12.0 | | 3.0 | | 30.0 | | 5.0 | | | | | 345.0 | | 5.0 | | | 49.0 | | 489.0 |
| Innolux | | | | | | | | | | | | | | | | | | | | | | | | | | | | | 5.0 | 1.0 | 6.0 |
| QDI | | 13.0 | | | | | | | | | | | 90.0 | | | | | | 65.0 | | 25.0 | | | 45.0 | | 5.0 | | | 54.7 | | 297.7 |
| Toppoly | | | | | | | | | | | | | | | | | | | | 10.0 | | | | | | | | | 5.0 | | 15.0 |
| TFT-LCD Supplier TOTAL | 17.5 | 118.0 | 61.7 | 56.3 | 63.0 | 1.0 | 52.0 | 779.6 | 525.0 | 19.0 | 109.0 | 26.1 | 419.5 | 683.5 | 188.0 | 115.0 | 180.0 | 172.0 | 615.0 | 59.5 | 98.5 | 35.0 | 128.0 | 1076.0 | 53.5 | 215.7 | 43.0 | 238.0 | 225.7 | 123.7 | 6497.7 |
| NEC | 13.8 | | | | | | | | | | | | | | | | | | | | 38.5 | | | 6.4 | | | | | | | 58.7 |
| NMV | | 98.9 | | | | | | | | | | | | 12.0 | | | | | | | | 38.0 | 40.0 | | | 27.0 | | | | | 215.9 |
| Fujitsu | | | 48.5 | | | | | | | | | | | 2.0 | | | | | | | | | | 5.0 | | | | | | | 55.5 |
| Samsung | | | | | | | | 485.6 | | | | | | | | | | | | | | | | | | | | | | | 485.6 |
| Sony | | | | 46.0 | | | | | 70.8 | | | | | | 38.0 | | | | | | | | | 68.0 | | | | | | | 222.8 |
| Dell | | | | | | | | 134.2 | 33.3 | | | | | 10.0 | 252.3 | | | | 269.3 | | | | | 179.3 | | | | | | | 878.4 |
| HP | | | | | | | | | | | | | | 93.5 | 80.0 | 33.6 | 35.0 | | 85.0 | | | | | 180.6 | | | | | | | 507.8 |
| Viewsonic | | | | | | | | | | | | | | | 0.9 | 18.0 | | | | | 12.9 | 11.0 | | 48.4 | | 16.0 | | | 38.7 | 8.8 | 154.7 |
| IBM | | | | | | | | 20.5 | 26.4 | | | | | | | | | | 26.9 | | | | | 55.0 | | | | | | 3.1 | 131.9 |
| Eizo Nanao | | | | | 48.0 | | | | | | | | | | | 6.0 | | | | | | | | | | | | | | | 54.0 |
| Philips | | | | | | | | | | | | | 171.7 | | | | | | | 5.0 | | | | | | | | | | | 176.7 |
| Hitachi | | | | | | | 1.1 | | | | | | | | | | | | | | | 32.5 | 3.0 | | | | | | 11.7 | | 48.3 |
| Sharp | | | | | | | 37.1 | | | | | | | | 11.0 | | 3.0 | | | | | | | | | 35.0 | | | | | 86.1 |
| Iiyama | | | | | | | | | | | | | | | | | | | | | | | | 10.8 | | 30.2 | | 9.0 | 1.3 | 1.5 | 52.8 |
| Gateway | | | | | | | | | 24.6 | | | | | | | | | | | 5.0 | 7.8 | 18.0 | | | | | | | | | 55.4 |
| Apple | | | | | | | | | 14.7 | | | | | 10.3 | | | | | | | | | | | | | | | | | 25.0 |
| Melco | | | | | | | | | | | | | | 2.0 | | 2.0 | 6.0 | | 2.0 | | | | | 10.0 | | | | | | | 22.0 |
| CMV | | | | | | | | | | | | | | | | | | | | | | 31.0 | | | | | | | 47.0 | | 78.0 |
| Siemens | | | | | | | | | | | | | | 17.0 | 9.8 | | | | 22.0 | | | | | | | 27.3 | 28.5 | | | | 104.7 |
| LGE | | | | | | | | | 230.4 | | | | | | | | | | | | | | | | | | | | | | 230.4 |
| Benq | | | | | | | | | | | | | | 151.9 | | | | | | | | | | | | | | | | | 151.9 |
| IO Data | | | | | | | | | | | | | | | 14.8 | | | | | | | | | | 15.0 | | | | | | 29.8 |
| Lenovo | | | | | | | | | | | | | | 20.0 | | | | | | | | | | 58.7 | | | 14.0 | | | | 92.7 |
| Acer | | | | | | | | | | | | | | | | | | | 53.5 | | | | 26.9 | 34.4 | 2.0 | | | | 90.1 | | 207.0 |
| AG Neovo | | | | | | | | | | | | | | | | 16.4 | | | | | | | | | | | | | | 1.0 | 17.4 |
| AOC | | | | | | | | | | | | | | | | | | | | | | | | 52.7 | | | | | | | 52.7 |
| Proview/MAG | | | | | | | | | | | | | | | | | | | | | | | | | | 95.1 | | | | | 95.1 |
| Others | | | | | | | | 14.4 | 60.1 | 13.3 | 91.3 | 20.0 | 27.5 | 82.7 | 58.5 | 36.1 | 44.7 | 19.1 | 79.1 | 17.1 | 19.7 | | 45.2 | 122.8 | 12.8 | 56.1 | 31.0 | 34.8 | 90.0 | 106.3 | 1082.4 |
| Total | 13.8 | 98.9 | 48.5 | 46.0 | 48.0 | 1.1 | 37.1 | 654.7 | 460.3 | 13.3 | 91.3 | 20.0 | 339.7 | 566.9 | 159.4 | 93.7 | 150.7 | 132.0 | 533.3 | 45.9 | 77.6 | 31.0 | 104.4 | 907.3 | 40.5 | 195.7 | 31.0 | 219.6 | 101.1 | 111.0 | 5373.7 |

# EXHIBIT   C







What's New    About TATUNG    Worldwide Offices    Product Overview

Organization
Philosophy
History

## Organization
## Major Domestic Subsidiaries

Major Factories
Major Overseas
Subsidiaries
Organization Chart

| | | |
|---|---|---|
| Chunghwa Picture Tubes Co. | Tel: 886-3-3675151<br>Fax: 886-3-3629441 | CRT Tube, LCD |
| Taiwan Telecommunication Industry Co., Ltd (TTIC) | Tel: 886-2-25963788<br>Fax: 886-2-25991076 | provides IP Videoconferencing (STB), Videophone, Multi-media Payphone, Internet Phone, VoIP gateway, Digital Antenna, and Digital Pair-Gain System. |
| Forward Electronics Co. | Tel: 886-2-26730411<br>Fax: 886-2-26735889 | Wire/Wireless Keyboard, Mouse, MPEG card, Graphic Card |
| Tatung OTIS Elevator Co. | Tel: 886-2-25961151<br>Fax: 886-2-25962940 | |
| SHANG CHIH CONTAINER TERMINAL CO., LTD | Tel:886-2-24312181<br>Fax:886-2-24318938 | Transporting, loading and unloading cargo, customs clearance container repa |
| TATUNG PRECISE METER CO., .LTD | Tel:886-2-28938482 | Speedometers, tachometers, fuel-meters, temperature-meters, tank indicators |
| Kuender&Co., Ltd | Tel:886-3-4732311~5<br>Fax:886-3-4732316<br>4732448 | Plastic injection molding |
| TATUNG TDK CO., LTD | Tel:886-3-4829131<br>Fax:886-3-4829135 | Soft-ferrite core, video display terminals, electronic devices |
| TATUNG FANUCROVOTICS CO., LTD | Tel:886-2-25925252#2355<br>Fax:886-2-25984565 | Production, sales, installation, and service of robotics for factory automation |
| TATUNG SM-CYCLO CO., LTD | Tel:886-2-25925252#2583.2584<br>Fax:886-2-25936062 | Speed reducers, speed variators |
| TISNet Technology Inc. | Tel:886-2-25984547<br>25984508<br>Fax:886-2-25984467 | Intranet, internet, lease line & dial up, virtual industry network, virtual industry dial-up network, quality & security control, phone & fax transfer, visual display |

| | | meeting, integration of multifunction, e-commerce, virtual host, host lease, home page |
|---|---|---|
| TATUNG EMC TECHNOLOGO CO. | Tel:886-2-25925252#2490 Fax:886-2-25859255 | |
| TATUNG OKUMA CO., LTD. | Tel:886-2-26748678 Fax:886-2-26713524 | Slide way grinding machines, NC bearing machines, CNC machining centers, double column milling machines, heat treatment equipment |
| TATUNG ATHERTON CO., LTD. | Tel:886-2-25925252#2280 Fax:886-2-25867996 | wines |
| TATUNG SYSTEM TECHNOLOGIES INC. | Tel:886-2-25915266 Fax:886-2-25957606 | |
| TATUNG CONSUMER PRODUCTS (TAIWAN) CO.,LTD. | Tel:886-2-25925252#2313 Fax:886-2-25984506 | |
| TATUNG COATINGS CO. | Tel:886-3-4830321 Fax:886-3-4838381 | Electrodepositing coatings, home appliances coatings, industrial coatings |
| SHANG CHIH CHEMICAL INDUSTRY CO. | Tel:886-2-25925252 | ABS plastic, color dyes |
| TATUNG CIE CASPING CO., LTD. | Tel:886-2-26736888 Fax:886-2-26722264 | ¡@ |
| TATUNG CHUGAI PRECIOUS METALS CO., LTD. | Tel:886-3-3863111 | Contact material, silver soldering bar, silver alloy material, silver panel, silver conductive material |
| TATUNG FORESTRY AND CONSTRUCTION COMPANY | Tel:886-2-25925252#2460 Fax:886-2-25925252#2318 | Civil engineering, architectural design, construction |
| HSIEH CHIH INDUSTRIAL LIBRARY PUBLISHING CO. | Tel:886-2-25925252#3421 Fax:886-2-25941371 | Literary and social sciences books |
| TATUNG HORTICULTURE CO., LTD. | Tel:886-2-25925252#2458 | A variety of trees and flowers |
| CHUNG HWA ELECTRONIC DEVELOPMENT CO., | Tel:886-2-25925252#2255 | Investment into companies in electronic components and products |

LTD.

| | | |
|---|---|---|
| TATUNG ELECTRONICS CO., LTD. | Tel:(886-2-25925252#3400 | ¡@ |
| Taipei lndustrial Co. | Tel:886-2-22189323 | Premixed cement and gravel |
| SAN CHIH SEMICONDUCTOR CO., LTD. | Tel:886-2-25925252#3386 | ¡@ |
| FORWARD ELECTRONICS LTD. | Tel:886-2-26730411 Fax:886-2-26735889 | |
| TOPPAN CHUNGHWA ELECTRONICS CO., LTD. | Tel:886-2-3643300 Fax:886-2-3649922 | ¡@ |

¡@

# EXHIBIT  D

**ORIGINAL**

1

120

1    IN THE UNITED STATES DISTRICT COURT
     IN AND FOR THE DISTRICT OF DELAWARE
2
                     - - -
3

HONEYWELL INTERNATIONAL, INC.      :    CIVIL ACTIONS
4    et al.                              :

5            Plaintiffs,               :    Guardian (34190-23)
                                        :
6         v.                            :
                                        :
7    AUDIOVOX COMMUNICATIONS CORP.,     :
     et al.                              :
8                                        :
             Defendants               :    NO. ▓▓▓▓▓▓KAJ)
9    ------------------------------------:
     HONEYWELL INTERNATIONAL, INC.      :
10   et al.                              :

11           Plaintiffs,               :
                                        :
12        v.                            :
                                        :
13   APPLE COMPUTER, INC., et al.,      :

14           Defendants               :    NO. 04-1338 (KAJ)
     ------------------------------------:
15   OPTREX AMERICA, INC.,             :

16           Plaintiff,                :
                                        :
17        v.                            :
                                        :
18   HONEYWELL INTERNATIONAL, INC.,     :
     et al.                              :
19                                        :
             Defendants               :    NO. 04-1536 (KAJ)
20                   - - -

21              Wilmington, Delaware
           Monday, May 16, 2005 at 9:30 a.m.
22              STATUS CONFERENCE

23                   - - -

24   BEFORE:    HONORABLE KENT A. JORDAN, U.S.D.C.J.

25                   - - -

1    on the record?

2          Okay.  You know, just taking introductions

3    demonstrates why this case probably needs some help, so here

4    is how I intend to hear argument this morning.  The first

5    thing I want to deal with is the Seiko Epson motion to

6    intervene and so whoever is speaking for Seiko Epson, please

7    come forward and I'll hear what you have to say and then

8    I'll hear what the plaintiffs have to say in response,

9    recognizing that the plaintiffs say, hey, we don't mind if

10   they intervene just as long as they stay at the back of the

11   line.  So that is what you ought to be focus on.

12          MR. BENSON:  Thank you, Your Honor.  As you

13   mentioned, the only argument on behalf of the plaintiff is

14   that Seiko Epson's intervention be conditioned upon its

15   customers going to trial first and Seiko Epson essentially

16   having to wait at the side line and go to trial later.

17   Seiko Epson is one of the real parties in interest in this

18   case, is one of the LCD manufacturers.

19          The patent at issue is really directed toward

20   LCDs and specifically some of the internal features and

21   structures of those LCDs.  As a manufacturer, we're able to,

22   are prepared to defend the infringement claims against

23   products that contain those LCDs but our customers do not

24   have the information that we do concerning the design and

25   manufacturer of manufacture of those accused components

1    that they simply purchase from us and put those into laptop

2    computers, cell phones, digital cameras and so forth.

3    And so as the real party in interest, we are, as the

4    manufacturer, really the party that ought to be going

5    first or at least at a minimum shouldn't be stayed in

6    having our customers going to trial first without us.

7         I'm not aware of any cases, your Honor, in which

8    a manufacturer intervened where its component products were

9    accused of infringement and then the manufacturer was stayed

10   either as a condition of intervention or otherwise while its

11   customers went to trial first.  That would be severely

12   prejudicial both to our customers and to Seiko Epson.  The

13   customers going to trial, not having designed, manufactured

14   the components accused of infringement, not being in the LCD

15   technology industry and yet they're left to defend those

16   products.

17         Seiko Epson would certainly be prejudiced

18   having to wait on the side lines and go second, given the

19   possibility of its customers being enjoined from purchasing

20   the products, the possibility of us having to indemnify

21   perhaps some of those customers for judgments entered.  And

22   there is simply no precedent or logic to the approach.

23   There aren't a lot of cases.

24         There is some motions to stay pending, motions

25   which seek to stay the customers while the manufacturers go

1          Is there something different about on the

2    discovery would take if you are taking it a year from now as

3    opposed to now?

4          MR. LUECK:  Well, I think there would be some

5    duplication but I can't a stand here and tell you, Your

6    Honor, with great accuracy without any discovery exactly how

7    that would play out.

8          The answer to your question from my standpoint

9    is this:  If we start with the products that we know are

10   going to be sold in the United States, which is the end

11   products, that the transactions take place here, and we

12   try that case, we have corralled the entire scope of the

13   infringement.

14          If we go with the product manufacturer or the

15   module manufacturers first, then what we're going to do is

16   we're going to have some modules that will be included and

17   some modules that won't.  And I think that does lead to a

18   confusing and duplicative effort.  And if the issue is the

19   complexity of figuring out the infringement for the end

20   product manufacturers, I'd like to address that for just a

21   moment, because I don't think that complicates the action.

22          THE COURT:  I will hear you on that, but I also

23   want to hear you a little further.  And I'm going to ask

24   somebody in this group, whoever is speaking in response to

25   it, to speak to me about the first point you made which was

1    are not manufactured by Nikon, they're OEM by another

2    defendant.  So Nikon is not truly an end product

3    manufacturer of them.

4            With respect to, just like Dell, last fall I

5    spoke to Matt Woods, Honeywell counsel, one of the counsel

6    saying, look, this really is a customer defendant stay

7    situation.  Nikon would like to be out.  We'll give the

8    supplier information and let us go.  Well, we gave them the

9    supplier information but they didn't let us go and we have

10   been very busy since then trying to orchestrate the

11   propriety, the setting up of the stay motions.

12           And one thing I tried to do is answer the

13   Court's anticipated question:  What is the percentage of the

14   market share?  It was impossible to try to find out given

15   the way that Honeywell has asserted its claim against so

16   many people and so many products, but I can stand here today

17   and say Nikon is a pure customer defendant and the supplier

18   is in the courtroom already.

19           THE COURT:  I say this with some trepidation.

20   Is there anybody else who feels like they need to be heard

21   on the stay motion?

22           Okay.  Good enough.

23           Well, I was particularly struck by some language

24   in one of Honeywell's brief that they had tried to structure

25   the case to avoid the complications encountered in CEA.  And

1    I wasn't all together sure what was meant by that but

2    putting the best spin on it, I would take it to mean that,

3    well, you know, we saw the Court struggle there with "who

4    ought to be first," suppliers or manufacturers and so we

5    thought we would deal with it by not naming any of the

6    manufacturers here.  Maybe I got you wrong on that but that

7    is sort of how I understood it.

8            But while I appreciate the effort, it doesn't

9    solve the problem for me because what I think was

10   predictable has happened, and that is the people who have a

11   real stake in terms of keeping their customers happy are the

12   manufacturers and suppliers, and they have been subject no

13   doubt to a whole lot of communication from their customers,

14   including demands for indemnification and third-party

15   complaints and probably less formal demands and requests.

16           So I feel like I do have a circumstance that

17   is very akin to the CEA case, whether they brought the

18   suppliers in in the first instance or not.  And that is why

19   I'm going to structure this case in roughly the same way.

20   Now, I say "roughly" because, you know, no two cases are

21   exactly alike, particularly when you have two cases which

22   are orchestrated on an operatic scale like these two are

23   with dozens and dozens of defendants, literally.

24           So I'm sure there are things, Mr. Lueck, in your

25   case that are not going to be like CEA's case, and so I

1    don't want you to be concerned that everything that happens

2    there, you are going to be in the same mold, because there

3    may be sound reasons to do things somewhat differently.

4            But I don't think there is a sound reason to

5    depart from the traditional rule which is in many cases and

6    has reached a point of being memorialized in the manual on

7    complex litigation that says you ought to give the people

8    who are making the accused device face the music, and let

9    them face it in the first instance, particularly in a case

10   like this where there is not something else going on where

11   these people are infringing.  They're taking something that

12   you say infringes and they're putting it into the stuff they

13   sell.  And so settling whether those components infringe,

14   if we got all the manufacturers in, would settle the thing

15   entirely.  If we don't get them all in, we will have

16   substantially reduced the universe of litigation that has to

17   go forward against the -- and I will use the term "end

18   product manufacturers" for ease of reference, with all due

19   respect to the folks from Nikon.  It's just likely to make

20   things more manageable in a way that is consistent with the

21   fair administration of justice.

22           So I'm going to grant some type of stay to the

23   end product manufacturers but the contours of that are

24   something that I'm open to discuss within bounds of reason.

25   In short, I think you made a persuasive case for needing to

1  find out from these people who is supplying what to who and

2  for what products.

3          And I will let the plaintiffs go after that in

4  discovery.  I'll open that as the first front in your war.

5  You find out who is doing the manufacturing and supplying

6  for who and for what products.

7          It may be that down the road, I'll lift the stay

8  again to some limited extent to allow product's success,

9  secondary consideration kind of discovery, but that is to me

10  an issue for another day.  Right now, the issue is who does

11  it make sense for you to get in here first and start suing.

12          Well, you got Optrex who is here saying "I want

13  in."  You got Seiko Epson who is here saying "I want in."

14  These are my customers and I want to stand behind my product

15  and make them sue them first because I'm the one who can

16  tell you whether it's infringing or not.

17          And I am going to grant Seiko Epson's motion

18  and let them in.  And I'm going to grant your motion to

19  consolidate because this is all one big happy family of

20  problems now and everybody is going to be in the same case,

21  and we'll come up with some kind of appropriate consolidated

22  case caption.

23          And I will give you a generous time period but

24  not overly generous to figure out who else you want to try

25  to haul in here on the manufacturers side, and then we'll

# EXHIBIT   E

# KIRKLAND & ELLIS LLP

#### AND AFFILIATED PARTNERSHIPS

200 East Randolph Drive
Chicago, Illinois 60601

Meredith Zinanni
To Call Writer Directly:
(312) 861-2010
mzinanni@kirkland.com

312 861-2000

www.kirkland.com

Facsimile:
312 861-2200

June 3, 2005

**Via Facsimile**
(512) 236-3218

Avelyn Marie Ross
Vinson & Elkins
2801 Via Fortuna  Suite 100
Austin, TX  78746-7568

> Re:    *Guardian Industries Corp. v. Dell, Inc. et al.*

Dear Avelyn:

I write in response to your letter of June 1, 2005, regarding the Dell products accused of infringement in the above-referenced case.

The accused products are non-licensed LCD devices made, sold, offered for sale, or shipped by Dell after October 29, 1996, that include a retardation film.  Currently, licensed LCD devices are devices that (a) contain an LCD module manufactured by Chi Mei Optoelectronics, Hitachi, LG Philips, Matsushita, Mitsubishi, NEC Corporation, Samsung, Tottori/Sanyo, Sanyo-Epson Imaging Devices, Sharp, or TMD/Toshiba, or (b) were sold to Dell by ViewSonic, Delta, or NEC-Mitsubishi.

Although the accused devices and the claims of the patents-at-issue are not expressly limited exclusively to Fuji Wide View film, it is Guardian's present understanding that the only retarders used commercially in LCD devices since 1996 have been Fuji Wide View films.  If Dell is unable to identify which of its LCD products include retarders, please provide us with: (1) a list of the non-licensed Dell LCD products made, sold, offered for sale, or shipped by Dell after October 29, 1996, including the manufacturer's name(s) and model number(s) of the LCD modules used therein, and (2) a specification sheet for each module or product.  With this information, which would be produced during discovery, we will be able to assist you in identifying the accused products.  Pursuant to Delaware L.R. 26.2, these specification sheets will be treated as Confidential Attorneys'-Eyes Only.

June 3, 2005
Page 2


Please let me know if you have any further questions.

Sincerely,

Meredith Zinanni

MZ/slm

# KIRKLAND & ELLIS LLP
### AND AFFILIATED PARTNERSHIPS

200 East Randolph Drive
Chicago, Illinois 60601

Meredith Zinanni
To Call Writer Directly:          312 861-2000                    Facsimile:
(312) 861-2010                                                    312 861-2200
mzinanni@kirkland.com       www.kirkland.com

June 3, 2005

**<u>Via Facsimile</u>**
(302) 652-0607

Sean P. Hayes
Fish & Richardson P.C.
919 North Market Street
Suite 1000
Wilmington, Delaware 19801

Re:    *Guardian Industries Corp. v. Dell, Inc. et al.*

Dear Sean:

I write in response to your letter of May 27, 2005, regarding the Hewlett-Packard ("HP") products accused of infringement in the above-referenced case.

The accused products are non-licensed LCD devices made, sold, offered for sale, or shipped by HP after October 29, 1996, that include a retardation film. Currently, licensed LCD devices are devices that (a) contain an LCD module manufactured by Chi Mei Optoelectronics, Hitachi, LG Philips, Matsushita, Mitsubishi, NEC Corporation, Samsung, Tottori/Sanyo, Sanyo-Epson Imaging Devices, Sharp, or TMD/Toshiba, or (b) were sold to HP by ViewSonic, Delta, or NEC-Mitsubishi.

Although the accused devices and the claims of the patents-at-issue are not expressly limited exclusively to Fuji Wide View film, it is Guardian's present understanding that the only retarders used commercially in LCD devices since 1996 have been Fuji Wide View films. If HP is unable to identify which of its LCD products include retarders, please provide us with: (1) a list of the non-licensed HP LCD products made, sold, offered for sale, or shipped by HP after October 29, 1996, including the manufacturer's name(s) and model number(s) of the LCD modules used therein, and (2) a specification sheet for each module or product. With this information, which would be produced during discovery, we will be able to assist you in identifying the accused products. Pursuant to Delaware L.R. 26.2, these specification sheets will be treated as Confidential Attorneys'-Eyes Only.

London          Los Angeles          Munich          New York          San Francisco          Washington, D.C.

June 3, 2005
Page 2

Please let us know if you have any further questions.

Sincerely

Meredith Zinanni

MZ/slm

# KIRKLAND & ELLIS LLP

### AND AFFILIATED PARTNERSHIPS

200 East Randolph Drive
Chicago, Illinois 60601

Meredith Zinanni
To Call Writer Directly:
(312) 861-2010
mzinanni@kirkland.com

312 861-2000

www.kirkland.com

Facsimile:
312 861-2200

June 8, 2005

**<u>Via Facsimile</u>**
(212) 751-4864

Kurt M. Rogers
Latham & Watkins LLP
885 Third Avenue
New York, New York 10022-4834

Re:    *Guardian Industries Corp. v. Dell, Inc. et al.*

Dear Kurt:

I write in response to your letter of May 31, 2005, regarding the staying the case and the Gateway products accused of infringement in the above-referenced case.

As discussed during the meet and confer on Tuesday, June 7, 2005, Guardian is aware of the decisions by Judge Jordan in the CEA and Honeywell matters, but we do not believe a stay is appropriate in this case.

The accused products are non-licensed LCD devices made, sold, offered for sale, or shipped by Gateway after October 29, 1996, that include a retardation film. Currently, licensed LCD devices are devices that (a) contain an LCD module manufactured by AU Optronics, BenQ, Chi Mei Optoelectronics, Hitachi, LG Philips, Matsushita, Mitsubishi, NEC Corporation, Samsung, Tottori/Sanyo, Sanyo-Epson Imaging Devices, Sharp, or TMD/Toshiba, or (b) were sold to Gateway by BenQ, ViewSonic, Delta, or NEC-Mitsubishi.

Although the accused devices and the claims of the patents-at-issue are not expressly limited exclusively to Fuji Wide View film, it is Guardian's present understanding that the only retarders used commercially in LCD devices since 1996 have been Fuji Wide View films. If Gateway is unable to identify which of its LCD products include retarders, please provide us with: (1) a list of the non-licensed Gateway LCD products made, sold, offered for sale, or shipped by Gateway after October 29, 1996, including the manufacturer's name(s) and model number(s) of the LCD modules used therein, and (2) a specification sheet for each module or product. With this information, which would be produced during discovery, we will be able to assist you in identifying the accused products. Pursuant to Delaware L.R. 26.2, these specification sheets will be treated as Confidential Attorneys'-Eyes Only.

London       Los Angeles       Munich       New York       San Francisco       Washington, D.C.

June 8, 2005
Page 2

Please let us know if you have any further questions.

Sincerely,

Meredith Zinanni

MZ/slm

# EXHIBIT   F

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **GUARDIAN INDUSTRIES CORP.,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) **Case No.:** |
| v. | ) **05-27-SLR** |
| | ) |
| **DELL, INC.; GATEWAY, INC.; HEWLETT-PACKARD CO.;** | ) **Jury Trial** |
| **ACER INC.; ACER AMERICA CORP.;** | ) **Demanded** |
| **AOC INTERNATIONAL; ENVISION PERIPHERALS, INC.;** | ) |
| **TPV TECHNOLOGY, LTD.; TPV INTERNATIONAL (USA),** | ) |
| **INC.; AU OPTRONICS CORP.; AU OPTRONICS** | ) |
| **CORPORATION AMERICA A/K/A AU OPTRONICS** | ) |
| **AMERICA, INC.; BENQ CORP.; BENQ AMERICA CORP.;** | ) |
| **CHUNGHWA PICTURE TUBES, LTD. A/K/A CHUNGHWA** | ) |
| **PICTURE TUBES CO.; TATUNG CO.;** | ) |
| **TATUNG CO. OF AMERICA, INC.; BOE HYDIS** | ) |
| **TECHNOLOGY CO., LTD.; BOE HYDIS AMERICA INC.;** | ) |
| **CHI MEI OPTOELECTRONICS; COMPAL ELECTRONICS,** | ) |
| **INC.; HANNSTAR DISPLAY CORP.; JEAN CO., LTD.;** | ) |
| **LITE-ON TECHNOLOGY CORP.; LITE-ON, INC. A/K/A** | ) |
| **LITEON TRADING USA, INC.; MAG TECHNOLOGY CO.,** | ) |
| **LTD.; MAG TECHNOLOGY USA, INC.; PROVIEW** | ) |
| **INTERNATIONAL HOLDINGS, LTD.; PROVIEW** | ) |
| **TECHNOLOGY, INC.; PROVIEW ELECTRONICS CO., LTD.;** | ) |
| **and QUANTA DISPLAY, INC.** | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

### DECLARATION OF CRAIG LEAVELL

I, Craig Leavell, make the following Declaration in support of Guardian's

Opposition to the Motions to Stay of Dell, Gateway, and Lite-On. I declare and state as

follows:

1.   I am a member in good standing of the bar of the State of Illinois. I am a

partner with the law firm of Kirkland & Ellis LLP, counsel for Plaintiff Guardian

Industries Corporation ("Guardian") in the above-referenced matter.

2.  I have personal knowledge of all facts set forth in this Declaration, and could testify to these facts if called to do so.

3.  I represented Guardian Industries Corp. in *Guardian Industries Corp. v. Samsung Electronics, et al.*, C.A. No. 1:03-cv-00934-SLR ("Guardian I"). In that case, the defendants were initially concerned about the joinder of multiple defendants and the proper order of trial. To address their concerns, the Court's Scheduling Order included a Status Conference, to be held approximately two months before the trial date. That Status Conference was to address trial management issues, such as whether multiple trials were necessary, and if so, the order of those trials. (D.I. 43 ¶ 11 of C.A. No. 1:03-cv-00934-SLR.)

4.  In Guardian I, LCD manufacturing defendants, such as Mitsubishi Electric Corporation, asserted during discovery that they did not know whether LCD modules sold to its OEMs located outside the U.S. were then sold to the U.S. According to Mitsubishi, the only LCD modules that they knew were sold in the U.S. were the small percentage of sales sold directly by Mitsubishi to customers in the U.S.

5.  In Guardian I, one reseller, ViewSonic Corporation, did not present its own invalidity and non-infringement positions. Rather, it relied upon the positions taken by Mitsubishi Electric to form its defense.

6.  In Guardian I, resellers NEC-Mitsubishi Visual Systems and ViewSonic originally took the position that they could not identify which of their LCD products included Fuji Wide View film. Eventually, either on their own or with help from Guardian, both NEC-Mitsubishi and ViewSonic were able to identify which of their LCD products included Fuji Wide View film.

2

7.   In this case, the parties are currently negotiating a Proposed Scheduling Order to present to the Court.  The current draft of the Proposed Scheduling Order includes a Status Conference for addressing trial management issues.  No defendant has objected to this provision of the Proposed Scheduling Order.

8.   Four of the defendant groups named in this case have already settled the litigation and taken licenses to Guardian's patents: AU Optronics, BenQ Corporation, Chi Mei Optoelectronics, and Delta Electronics.

I declare the foregoing to be true and correct under penalty of perjury under the laws of the United States, and that this Declaration was executed on June 21, 2005, in Chicago, Illinois.

Craig Leavell

3

# EXHIBIT   G

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

RECEIVED

FEB 09 2004

BLANK ROME

| | |
|---|---|
| GUARDIAN INDUSTRIES CORP., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 03-934-SLR |
| | ) |
| SAMSUNG ELECTRONICS CO., LTD., | ) |
| SAMSUNG ELECTRONICS AMERICA, INC. | ) |
| SAMSUNG INTERNATIONAL, INC. | ) |
| SHARP CORPORATION, | ) |
| SHARP ELECTRONICS CORPORATION, | ) |
| SANYO ELECTRIC COMPANY, | ) |
| SANYO NORTH AMERICA CORPORATION, | ) |
| TOTTORI SANYO ELECTRIC COMPANY, | ) |
| MITSUBISHI ELECTRIC CORPORATION, | ) |
| NEC CORPORATION, | ) |
| NEC-MITSUBISHI ELECTRIC VISUAL SYSTEMS CORP., | ) |
| NEC-MITSUBISHI ELECTRONICS DISPLAY OF AMERICA, | ) |
| and VIEWSONIC CORPORATION, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## SCHEDULING ORDER

This ___9th___ day of February, 2004, the parties having satisfied their obligations

under Fed. R. Civ. P. 26(f), and the Court having conducted a pretrial scheduling conference

pursuant to Fed. R. Civ. P. 16 and D. Del. LR 16.2(a) and (b),

IT IS ORDERED that:

1.    **Pre-Discovery Disclosures.** The Parties will exchange by February 6,

2004 the information required by Fed. R. Civ. P. 26(a)(1) and D. Del. LR 16.2.

2.    **Discovery.**

(a) Discovery will be needed on the following subjects:

At this time Guardian expects it will need discovery to support its claims of infringement, willful infringement, damages, and to rebut defendants' defenses and counterclaims. Guardian's required discovery will include discovery of the defendants, as well as their employees, agents, suppliers and customers, relating to defendants' activities in selling, offering for sale, manufacturing, using, and/or importing LCD products, including allegedly infringing products, as well as their alleged inducement of infringement and contributory infringement.

Defendants each require discovery on a number of issues, including the basis for plaintiff's claim of infringement of the patents in suit ("the Patents"); the basis for plaintiff's claim that the alleged infringement is willful; conception, development and reduction to practice of the alleged inventions claimed in the Patents; any use, sale or offer for sale by the plaintiff or any predecessor in title to the Patents; any knowledge of the plaintiff, the inventors, or any predecessor in title of the plaintiff, of any disclosure, use, sale or offer for sale of the alleged inventions claimed in the Patents; the facts relating to plaintiff's ownership of the patents in suit, including the circumstances under which it purchased the patents; the meaning of the claims of the Patents; documents, products and/or activities that may constitute prior art to the Patents; any facts or evidence which plaintiff may contend constitutes evidence of patentability or non-obviousness of the alleged inventions claimed in the Patents; the scope of description and enablement provided by the disclosures of the Patents; the best mode(s) contemplated by the inventors of carrying out the alleged inventions claimed by the Patents at the time that the applications for the Patents were filed; facts relating to the prosecution of the Patents; facts relating to the enforceability of the Patents; damages claimed by plaintiffs as a result of the

2

alleged infringement; contacts between Guardian and defendants' present or former employees, agents, suppliers or customers; efforts to license the Patents; royalties received by the plaintiff or any predecessor in title for licensing of the Patents; industry licensing practices for technology that is similar to that of the Patents; marking and notice to the defendants; non-infringing alternatives; and all facts relating to any defenses and counterclaims identified in defendants' answers. Non-party discovery will also be required on some or all of the above issues and facts.

The above lists of subjects are for the Court's planning purposes only and are not necessarily exclusive and will not form the basis for any restriction on subjects on which discovery shall be permitted. The above lists are also not an indication or finding by the Court that any particular discovery is (or is not) relevant or permissible.

(b) All fact discovery shall be commenced in time to be completed by January 15, 2005.

(1)    Written discovery requests may be served no earlier than February 6, 2004.

(2)    Document production shall be completed on or before June 30, 2004.

(3)    Maximum of 30 interrogatories by each named party to each other named party. If contention interrogatories are exchanged, the party bearing the burden of proof on any issue addressed by said interrogatories shall respond first, the party without the burden shall reply thereafter.

(4)    Maximum of 100 requests for admission by each party to any other party, not including requests directed to the authentication of documents and the proper translations of foreign documents.

(5)    In the absence of agreement among the parties or by order of the Court, no deposition (other than those noticed under Fed. R. Civ. P. 30(b)(6)) shall be scheduled prior to the scheduled date for completion of document production.

3

(6)     Guardian is limited to 125 hours per defendant group of
taking testimony by deposition upon oral examination of
fact witnesses. Each group of related defendants is limited
to a total of 125 hours of taking testimony by deposition
upon oral examination of fact witnesses.

Each fact witness for whom English is their first language
shall be made available for only one deposition of up to
seven consecutive hours, at which time any party who
wants to examine the witness shall do so. Each fact witness
for whom English is not their first language shall be made
available for only one deposition of up to one-and-one-half
consecutive days (10.5 hours total), at which time any party
who wants to examine the witness shall do so.

Notwithstanding the foregoing limitations, Mr. Gang Xu
and Mr. Adiel Abileah (the named inventors of the patents-
in-suit) shall each be made available for depositions of up
to three days (21 hours), which shall be consecutive , if
possible, subject to modification by the parties for good
cause or by the Court, at which time any party who wants
to examine the witness shall do so.

The limits on the length of individual depositions may be
extended by agreement of the Parties or by the Order of the
Court, for good cause shown.

(7)     Only the amount of time that a particular defendant group
(or member thereof) spends examining a witness will be
charged to that defendant group's total hours for deposition
time.

(8)     Each defendant shall advise Guardian by October 31, 2004
whether it intends to reply on advice of counsel in defense
to the charge of willfulness.

(c) Expert discovery shall be commenced in time to be completed by

April 15, 2005.

(1)     Expert reports on issues for which the Parties have the
burden of proof due February 7, 2005. Rebuttal expert
reports due March 7, 2005.

(2)     Each expert deposition is limited to a maximum of 10 hours
per expert, unless extended by the parties. Notwithstanding
the foregoing, if an expert addresses more than one party,

4

the deposition of that expert is limited to 21 total hours over three consecutive days unless extended by agreement of the parties. The parties are not permitted to engage in duplicative examination.

(3)    To the extent any objection to expert testimony is made pursuant to the principles announced in <u>Daubert v. Merrell Dow Pharm., Inc.</u>, 509 U.S. 579 (1993), it shall be made by motion no later than the deadline for dispositive motions set forth herein, unless otherwise ordered by the Court.

(d) Supplementations under Rule 26(e) shall take place in a timely manner throughout discovery, but at the very least shall be made on August 2, 2004 and December 1, 2004.

(e) Discovery Disputes.

(1)    The Court shall conduct at least two (2) in-person discovery status conferences -- the first on July 28, 2004 at 4:30 p.m., and the second on December 14, 2004 at 4:30 p.m.

(2)    The Court shall remain available to resolve by telephone conference disputes that arise during the course of a deposition and disputes over the terms of a protective order.

(3)    Absent express approval of the court following a discovery conference, no motions pursuant to Fed. R. Civ. P. 37 shall be filed.

**(f) Fact Witnesses to be called at trial**

Within one (1) month following the close of expert discovery, each party shall serve on the other parties a list of each fact witness (including any expert witness who is also expected to give fact testimony), who has previously been disclosed during discovery and that it intends to call at trial. Within one (1) month of receipt of such fact witness list, each party shall serve a list of each rebuttal fact witness that it intends to call at trial. The parties shall have the right to depose any such fact witnesses who have not previously been deposed in this case. Such deposition(s) shall be held within one (1) month after service of the list of rebuttal fact witnesses and each such deposition shall be limited to ten (10) hours by the plaintiff or each group of related defendants, unless extended by agreement of the parties or upon order of the Court upon good cause shown.

5

3.    **Joinder of Other Parties and Amendment of Pleadings.**  All motions to join other Parties and amend the pleadings shall be filed on or before June 30, 2004.

4.    **Settlement Conference.**  Pursuant to 28 U.S.C. § 636, this matter is referred to Magistrate Judge Thynge for the purposes of exploring the possibility of a settlement.

5.    **Claim Construction Issue Identification.**  If the Court does not find that a limited earlier claim construction would be helpful in resolving the case, on September 15, 2004, the Parties shall exchange a list of those claim term(s)/phrase(s) that they believe need construction and their proposed claim construction of those term(s)/phrase(s).  This document will not be filed with the Court.  Subsequent to exchanging that list, the parties will meet and confer to prepare a Joint Claim Construction Statement to be submitted pursuant to paragraph 7 below.

6.    **Summary Judgment Motions.**  All summary judgment motions shall be served and filed with an opening brief on or before April 14, 2005.  Briefing shall be pursuant to D. Del. LR 7.1.2.  No summary judgment motion may be filed more than ten (10) days before the above date without leave of Court.  Oral argument shall be conducted on June 9, 2005 at 3:00 p.m.

7.    **Claim Construction.**  Issues of claim construction shall be submitted to the Court no later than April 14, 2005, to be considered by the Court in conjunction with the summary judgment motions.

8.    **Applications by Motion.**  Any application to the Court shall be by written motion filed with the clerk.  The Court will not consider applications and requests submitted by letter or in a form other than a motion, absent express approval by the Court.

(a)    **Any non-dispositive motion should contain the statement required by D. Del. LR 7.1.1.**

(b)    No telephone calls shall be made to chambers.

(c)    Any party with an **emergency** matter requiring the assistance of the Court shall e-mail chambers at: slr_civil@ded.uscourts.gov. The e-mail shall provide a short statement describing the emergency. NO ATTACHMENTS shall be submitted in connection with said e-mails.

9.    **Motions *in Limine*.** All motions *in limine* shall be filed on or before October 7, 2005. All responses to said motions shall be filed on or before October 14, 2005.

10.    **Jury Instructions, V*oir Dire*, and Special Verdict Forms.** Pursuant to Local Rules 47 and 51 the Parties should file proposed *voir dire*, instructions to the jury, and special verdicts and interrogatories three full business days before the final pretrial conference.

11.    **Status Conference.** A status conference shall be held on September 14, 2005 at 4:30 p.m. in Courtroom No. 6B, Sixth Floor, Federal Building, 844 King Street, Wilmington, Delaware. During this status conference, the Court will consider how to order the trial of this action.

12.    **Pretrial Conference.** A pretrial conference will be held on October 21, 2005, at 1:30 p.m. in courtroom 6B, Sixth Floor, Federal Building, 844 King Street, Wilmington, Delaware. The Federal Rules of Civil Procedure and D. Del. LR 16.4 shall govern the pretrial conference.

13.    **Trial.** This matter is scheduled for one or more jury trial(s) commencing on November 7, 2005, in courtroom 6B, Sixth Floor, Federal Building, 844 King Street, Wilmington, Delaware. The Court has tentatively scheduled a total of six weeks, beginning on

7

November 7, 2005, on its calendar for the trial(s) of this case, but will consider the actual

schedule for the trial(s) of this action at the September 14, 2005 status conference.  For purposes

of completing pretrial preparations, the parties should plan on being allocated a total number of

hours in which to present their respective cases.

Honorable Sue L. Robinson
United States District Judge

8