IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF DELAWARE

| | |
|---|---|
| GUARDIAN INDUSTRIES CORPORATION ) | |
| ) | |
| *Plaintiff,* ) | |
| ) | |
| v. ) | |
| ) | |
| DELL INC.; ) | |
| GATEWAY, INC.; ) | |
| HEWLETT-PACKARD COMPANY; ) | |
| ACER INC.; ) | |
| ACER AMERICA CORPORATION; ) | |
| AOC INTERNATIONAL; ) C.A. No. 05-27-SLR |
| ENVISION PERIPHERALS, INC.; ) | |
| TPV INTERNATIONAL (USA) INC.; ) | |
| AU OPTRONICS CORPORATION; ) | |
| AU OPTRONICS CORPORATION AMERICA a/k/a ) | |
| AU OPTRONICS AMERICA, INC.; ) | |
| BENQ CORPORATION; ) | |
| BENQ AMERICA CORPORATION; ) **JURY TRIAL DEMANDED** |
| CHUNGHWA PICTURE TUBES, LTD. a/k/a ) | |
| CHUNGHWA PICTURETUBES COMPANY.; ) | |
| TATUNG COMPANY; ) | |
| TATUNG COMPANY OF AMERICA, INC.; ) | |
| BOE HYDIS TECHNOLOGY COMPANY, LTD.; ) | |
| BOE HYDIS AMERICA, INC.; ) | |
| COMPAL ELECTRONICS, INC.; ) | |
| DELTA ELECTRONICS, INC.; ) | |
| DELTA PRODUCTS CORPORATION; ) | |
| DELTA ELECTRONICS (THAILAND) ) | |
|    PUBLIC COMPANY, LTD.; ) | |
| HANNSTAR DISPLAY CORPORATION; ) | |
| JEAN CO., LTD.; ) | |
| LITE-ON TECHNOLOGY CORPORATION; ) | |
| LITE-ON, INC. a/k/a ) | |
| LITEON TRADING USA, INC.; ) | |
| MAG TECHNOLOGY COMPANY, LTD.; ) | |
| MAG TECHNOLOGY USA, INC.; ) | |
| PROVIEW INTERNATIONAL HOLDINGS, LTD.; ) | |
| PROVIEW TECHNOLOGY, INC.; and ) | |
| QUANTA DISPLAY, INC. ) | |
| ) | |
| *Defendants.* ) | |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS DELL, GATEWAY AND LITE-ON'S MOTIONS TO STAY**

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................................1

ARGUMENT ..........................................................................................................................2

I. GUARDIAN CANNOT COMPLAIN THAT A STAY WOULD CREATE PIECEMEAL LITIGATION WHEN THIS IS PRECISELY THE LITIGATION STRATEGY IT HAS PURSUED ...............................................................................................................2

II. GUARDIAN FAILS TO RECOGNIZE THAT THE ISSUES AND THE CASE AS A WHOLE WILL BE SIMPLIFIED IF THE CASE AGAINST THE CUSTOMER DEFENDANTS IS STAYED ................................................................................................................2

III. GUARDIAN WILL NOT BE PREJUDICED BY A STAY ...............................6

IV. DESPITE GUARDIAN'S CLAIMS, THE CUSTOMER DEFENDANTS WILL BE PREJUDICED IF A STAY IS NOT GRANTED ...............................................................................................................9

V. NOW IS THE TIME TO SIMPLIFY THE PROCEEDINGS .........................12

CONCLUSION .....................................................................................................................13

# TABLE OF AUTHORITIES

## CASES

*Air Products and Chemicals, Inc. v. MG Nitrogen Services, Inc.*,
   133 F. Supp. 2d 354 (D. Del. 2001) ............................................................................. 6

*Commissariat A L'Energie Atomique v. Dell Computer Corp.*,
   C.A. No. 03-484-KAJ, 2004 WL 1554382 (D. Del. May 13, 2004) ..................... *passim*

*Corning Glass Works v. U.S.*,
   220 Ct. Cl. 605 (1979) ................................................................................................ 11

*Honeywell Int'l Inc. v. Audiovox Communications Corp.*,
   C.A. No. 04-1337-KAJ, slip op. (D. Del. May 18, 2005) ...................................... *passim*

*Kahn v. General Motors Corp.*,
   889 F.2d 1078 (Fed. Cir. 1989) ................................................................................ 5, 6

*Refac Int'l, Ltd. v. IBM*,
   790 F.2d 79 (Fed. Cir. 1986) ...................................................................................... 10

Customer defendants Dell, Inc. ("Dell"), Gateway, Inc. ("Gateway") and Lite-On Inc. ("Lite-On," collectively "the Customer Defendants"), submit this reply in support of their motions to stay this case against them pending resolution of this case against the LCD product manufacturer co-defendants.

## INTRODUCTION

As in the *CEA* and *Honeywell* cases pending before Judge Jordan in this District, the Plaintiff's claims against Customer Defendants should be stayed pending resolution of the patent infringement claims defended by the LCD manufacturers. The resolution of Guardian's allegations of infringement against the Customer Defendants hinges on whether the "LCDs and LCD products" manufactured by the LCD manufacturers infringe any valid and enforceable claim of the patents-in-suit. This determination can be made regardless of whether the Customer Defendants participate in further proceedings.

It is the LCD manufacturers who possess the technical knowledge and resources to defend against Guardian's claims of infringement. And it is the LCD manufacturers who have the prevailing interest in defending against those claims. Guardian will not be prejudiced by proceeding first against those who have the evidence necessary to support (or defeat) Guardian's allegations of infringement. In stark contrast, however, the Customer Defendants undoubtedly will be prejudiced if they are forced to defend against these allegations—for it will require the expenditure of significant resources and considerable expense for the Customer Defendants to acquire the knowledge and evidence presently in possession of the LCD manufacturers.

Proceeding against the LCD manufacturers, while staying the case against Customer Defendants, will also substantially lessen, if not completely eliminate, the need

for a further trial of Guardian's claims against the Customer Defendants. Guardian's own settlement and licensing efforts, directed toward the LCD manufacturers, indicates Guardian's own understanding of the real parties-in-interest—the LCD manufacturers.

A stay will also simplify and narrow the issues to be addressed by this Court, thereby conserving judicial economy. Fewer parties mean fewer products, fewer lawyers, fewer discovery disputes, and fewer issues for trial. There is no reason for Customer Defendants to continue to expend resources defending this lawsuit where their participation is not necessary. A stay will streamline the case and reduce the burden on this Court.

## ARGUMENT

I. **GUARDIAN CANNOT COMPLAIN THAT A STAY WOULD CREATE PIECEMEAL LITIGATION WHEN THIS IS PRECISELY THE LITIGATION STRATEGY IT HAS PURSUED**

Guardian's primary argument against a stay – that it will suffer prejudice because it will be forced to engage in piecemeal litigation – is not credible. (*See* D.I. 132 at 5-7, 10-11.) As Guardian acknowledges, this is Guardian's second lawsuit for infringement of the patents-in-suit. (D.I. 132 at 2.) Thus, Guardian itself has pursued its infringement claims against LCD manufacturers, OEMs and customers in a piecemeal manner, rather than consolidating its claims into a single lawsuit, and cannot credibly complain that it would be prejudiced by the stay here.

II. **GUARDIAN FAILS TO RECOGNIZE THAT THE ISSUES AND THE CASE AS A WHOLE WILL BE SIMPLIFIED IF THE CASE AGAINST THE CUSTOMER DEFENDANTS IS STAYED**

Guardian ignores the Customer Defendants' arguments, based on the *Honeywell* and *Commissariat A L'Energie Atomique* LCD patent infringement cases, that a stay against them would simplify and streamline the case. (D.I. 132 at 11-13.) *See Honeywell*

2

*Int'l Inc. v. Audiovox Communications Corp.*, C. A. No. 04-1337-KAJ, slip op. at 6-7 (D. Del. May 18, 2005)(D.I. 110, Ex. B); *Commissariat A L'Energie Atomique v. Dell Computer Corp.*, C. A. No. 03-484-KAJ, 2004 WL 1554382, at *3 (D. Del. May 13, 2004) ("CEA") (D.I. 110, Ex. A). As Judge Jordan recognized, a stay will simplify discovery and the case as a whole, and efficiency and judicial economy will be promoted if the suit proceeds against the defendant manufacturers. *See Honeywell*, C. A. No. 04-1337-KAJ, slip op. at 9; *CEA*, 2004 WL 1554382, at *3.

In *Honeywell*, the Court noted that a stay would "vastly simplify the issues and trial" and that "in the interest of judicial economy, dealing with the manufacturers first is the fairest and most efficient way to proceed." *Honeywell*, C. A. No. 04-1337-KAJ, slip op. at 8-9. In *CEA*, the Court ruled that the stay would allow the case to proceed against the manufacturers who "are in the best position to contest the validity and infringement of CEA's asserted patents." *CEA*, 2004 WL 1554382, at *3. The resolution of the validity and infringement issues prior to proceeding against the customer defendants in *CEA*, would "surely simplify this case" and could potentially "conserve[e] judicial resources and expense to the parties." *CEA*, 2004 WL 1554382, at *3. Furthermore, while Guardian claims that a stay might create piecemeal litigation, the Court in *CEA* explained that "staying the case against the remaining defendants [OEM/distributors and retailers] may streamline the case and avoid piecemeal litigation altogether." *CEA*, 2004 WL 1554382, at *2. Guardian's assertion that, unlike Honeywell, it did not focus solely on non-manufacturing defendants, but named LCD manufacturing and non-manufacturing parties alike as defendants, only confirms that this case closely resembles *CEA*. (D.I. 132

3

at 2, 7.) The Customer Defendants agree with Judge Jordan's analysis in *Honeywell* and *CEA* and urge the Court to grant the motions to stay.

Guardian's argument that case management issues can be addressed at a status conference before trial misses the point. (D.I. 132 at 11-13.) Guardian acknowledges that it has settled with four groups of defendants in this case, all of the defendants in its first LCD patent infringement lawsuit ("Guardian I") and a number of other parties "that were not named in any lawsuit." (D.I. 132 at 12.) In light of Guardian's settlement strategy and history, it is highly likely that Guardian will settle its claims with and grant licenses to additional LCD manufacturer defendants and third parties. As more LCD manufacturers take licenses under the patents-in-suit, more of the LCD products sold by the Customer Defendants will be covered by licenses, resulting in fewer LCD products ultimately at issue in this case. It makes little sense for the Customer Defendants – instead of LCD manufacturers – to search for, collect and produce documents and answer written discovery when the settlement history from Guardian I and this case strongly indicates that more parties will settle, leaving fewer accused products, if any, at issue, and eliminating the need for discovery regarding those products. If, for example, the four groups of defendants that have already settled in this case had not settled early-on, but instead settled after significant discovery, the considerable time, effort and expense incurred by the Customer Defendants in responding to discovery with respect to those settling defendants would have been a complete waste of time and resources. Similarly, any motion practice involving the Customer Defendants with respect to products sold by these settling parties would have wasted the Court's resources as well.

If Guardian's infringement claims against the Customer Defendants survive after resolution of their case against the LCD manufacturers, Guardian can move forward with its remaining claims, if any, against the Customer Defendants at that time. Guardian would suffer no prejudice from any delay. *See CEA*, 2004 WL 1554382, at *2 (rejecting argument that plaintiff would suffer "any real prejudice or tactical disadvantage" if a stay was granted and explaining that plaintiff would be compensated for "any delay it experiences in recovering damages against the remaining defendants by interest on the award"); *see also Honeywell*, C. A. No. 04-1337-KAJ, slip op. at 9 (stating that "a stay would not unduly prejudice Honeywell, it will vastly simplify the issues and trial of the case against the manufacturer defendants"). In light of Guardian's litigation strategy and settlement history, efficiency is best served by proceeding against the manufacturer defendants and evaluating the case against the Customer Defendants after the dust settles.

Guardian's argument that the customer suit exception does not apply is erroneous. (D.I. 132 at 8.) The Court in both *Honeywell* and *CEA* relied on customer suit exception principles – which favor actions against manufacturers over customers in patent infringement cases – in granting stays. *See Honeywell*, C. A. No. 04-1337-KAJ, slip op. at 6-9; *CEA*, 2004 WL 1554382, at *3. In both *Honeywell* and *CEA*, the Court granted stays against "non-manufacturer defendants" and "OEM/distributors and retailers" respectively. *See Honeywell*, C. A. No. 04-1337-KAJ, slip op. at 9; *CEA*, 2004 WL 1554382, at *3. Guardian's cases to the contrary are wholly inapposite.[1] (D.I. 132 at 8.)

---

[1] In *Kahn v. General Motors Corp.*, 889 F.2d 1078 (Fed. Cir. 1989), the plaintiff, Kahn, sued GM in New York for patent infringement and tortious conduct. Kahn was sued by Motorola in a declaratory action in Illinois. The stay against Kahn's suit while the Illinois suit proceeded was vacated and remanded because (1) the trial court erroneously characterized GM as a simple customer and Motorola as a manufacturer, (2) Motorola

5

### III. GUARDIAN WILL NOT BE PREJUDICED BY A STAY

The thrust of Guardian's prejudice position is that it will suffer evidentiary prejudice in the event this Court enters a stay. This is simply not true. Distilled down to simple terms—Guardian complains that Movants, as resellers, are the only entities in possession of supplier information and a stay will prevent discovery into the identities of those suppliers.[2] (D.I. 132 at 4-5 and 6). It is not necessary for Movants to provide this information through full discovery in order for the lawsuit to proceed against the manufacturers. *See Honeywell*, C. A. No. 04-1337-KAJ, slip op. at 7-8, *CEA*, 2004 WL 1554382, at *3. In fact, prior to filing its Motion to Stay, Dell attempted to address Guardian's concerns by volunteering to identify the suppliers of LCDs of any product Guardian identified as an accused device.[3] This preliminary identification of infringing products is needed because Movants, as mere customers of allegedly infringing products,

---

was not a manufacturer, user or seller of any products that were the subject of the patent, which Kahn conceded, and, (3) the outcome of the case in Illinois would not resolve the case in New York with respect to either the patent infringement issues or the tortious conduct. *Kahn*, 889 F.2d at 1081-83. In *Air Products*, the customer suit exception did not apply because the direct infringer was not merely a reseller of the accused product. *Air Products and Chemicals, Inc. v. MG Nitrogen Services, Inc.*, 133 F. Supp. 2d 354, 357 (D. Del. 2001).

[2] In conferring with respect to Dell's Motion, counsel for Guardian represented that Guardian *might* not oppose Dell's Motion to Stay were Dell to agree to provide supplier information. Counsel for Dell agreed to these terms yet Guardian did not respond affirmatively prior to the filing of Dell's Motion.

[3] In the same vein, Guardian chastises Movants for 'putting the cart before the horse' because of Movants' suggestion that Guardian provide the identity of products Guardian believes infringe. (D.I. 132 at 12; *See also* Dell Letter to Meredith Zinanni, dated June 1, 2005, Ex. 1 hereto; D.I. 132, Exhibit E); Gateway Letter to Bryan Hales, dated May 31, 2005, Ex. 2 hereto). Guardian, instead of providing such information, simply claims that "the accused products are LCD devices that use Fuji Wide View film and offered "help" to identify those products what likely include film. Again, Guardian completely misses the point and fails to identify a single allegedly infringing product. Presumably Guardian performed an adequate pre-suit investigation by examining defendants' products and identifying, at a minimum, at least one infringing product for each defendant.

6

are in no position to determine whether any retardation film, Fuji Wide View film or otherwise, is contained within their products.[4] Movants do not possess the technical or design information necessary to make this determination.[5] In short, the only way for Movants to identify the allegedly infringing suppliers/manufacturers is to have an understanding of these specific products Guardian is accusing of infringement.[6]

Dell again offers, and Gateway and Lite-On likewise offer to provide information regarding the identity of Movants' suppliers. Accordingly, Movants propose:

1. Guardian first identifies infringing products. This means, as Guardian has claimed it can do, identify those products Guardian alleges contains a Fuji Wide View film.

2. Within a reasonable period of time following that initial disclosure (Movants suggest 30 days), Movants will make reasonable efforts to provide Guardian with a list of suppliers for each of those identified products. And to the extent known or easily ascertainable, Movants will also provide the suppliers' part numbers and OEM/manufacturer information.

---

[4] Guardian accuses Dell and Gateway as identifying themselves as OEMs. (D.I. 132 at 2). This is completely inaccurate. Dell specifically states that "Dell simply purchases LCDs as components for Dell products or purchases products containing LCDs as components." (D.I. 109 at 3). Gateway likewise states that it "purchases LCDs or LCD-containing products from LCD manufacturers and OEMs, which Gateway then resells to customers." (D.I. 112 at 3.)

[5] Guardian states in conclusory fashion that a stay would require Guardian to engage in "complicated, expensive, time-consuming international discovery from third parties," without further support or explanation and fails to address the fact that Movants would be required to do precisely the same thing if a stay is not granted. (D.I. 132 at 6).

[6] It is not sufficient for Guardian to identify "any product with an LCD" unless Guardian reasonably believes all such LCDs are infringing. For example, Dell sells literally hundreds of Dell products having LCD displays and these products include, among others, flat panel TVs, computer monitors, laptop computers, PDAs, and MP3 players.

7

*See Honeywell*, C.A. No. 04-1337-KAJ, slip op. at 9.[7] The stay and limited information exchange proposed here, is an effort to strike a balance between both parties' claims of prejudice.

Guardian, however, attempts to distinguish *Honeywell* by stating that "Honeywell [] focused its efforts *solely* on the 'non-manufacturing' defendants, ignoring the LCD module manufacturers" and unlike Honeywell, "Guardian has named both manufacturing and non-manufacturing parties in order to efficiently protect its interests with minimal litigation." (D.I. 132 at p. 7). However, Guardian ignores *CEA*, in which the Court granted a stay in favor of non-manufacturing defendants where the plaintiff filed suit against manufacturer and non-manufacturer defendants alike. *CEA*, 2004 WL 1554382 (D. Del. May 13, 2004).

Furthermore, Judge Jordan recognized at the stay hearing, that the point of distinction relied upon by Guardian here, *i.e.*, that Honeywell named only suppliers as defendants, is not relevant. Honeywell admitted their attempt to avoid the situation presented in *CEA* by focusing its efforts on the customers. In response, Judge Jordan stated that:

> the people who have a real stake in terms of keeping their customers happy are the manufacturers and the suppliers, and they have been subject no doubt to a whole lot of communication from their customers, including demands for indemnification and third-party complaints and probably less formal demands and requests. So I feel like I do have a circumstance that is very akin to the *CEA* case, whether they brought the suppliers in in the first place or not. And that's why I'm going to structure this case roughly in the same way.

---

[7] Judge Jordan also noted, consistent with Guardian's bare description of the accused products in this case, that Honeywell broadly identified infringing products as "LCD screen-containing products" and found that further identification by Honeywell was appropriate. *See Honeywell*, slip op. at n. 5.

8

*See* Hearing Transcript, dated May 16, 2005, 44:10-19 (Ex. 3 hereto). As Judge Jordan explained, the entities having a "real stake" should proceed first—

> you ought to give the people who are making the accused device face the music, and let them face it in the first instance, particularly in a case like this where there is not something else going on where these people are infringing. ***They're taking something that you say infringes and they're putting it into the stuff they sell.*** And so settling whether those components infringe, if we got all the manufacturers in, would settle the thing entirely. If we don't get them all in, we will have substantially reduced the universe of litigation that has to go forward against ... 'end product manufacturers' .... It's just likely to make things more manageable in a way that is consistent with the fair administration of justice.

(Ex. 3, 45:7-21).

Therefore, the Customer Defendants' stay request and the limited information exchange is fully consistent with *Honeywell* and *CEA*, would *substantially* reduce the universe of litigation, would eliminate Guardian's purported prejudice, and would simplify proceedings for the parties and this Court.

### IV. DESPITE GUARDIAN'S CLAIMS, THE CUSTOMER DEFENDANTS WILL BE PREJUDICED IF A STAY IS NOT GRANTED

The Customer Defendants will be prejudiced if a stay is not granted. There can be no dispute that the costs associated with patent litigation and the disruption to a litigant's business are significant. As discussed above, Guardian's settlement strategy strongly indicates that Guardian will settle its claims with additional (and potentially all) LCD manufacturer defendants, significantly reducing the number of LCD products at issue. As fewer accused products remain, the need for discovery relating to those products is eliminated. Guardian does not dispute these facts. (D.I. 132 at 12.)

Guardian's assertion that the Customer Defendants must have sufficient technical information about the LCDs contained in their products, or that the Customer Defendants

9

must have obtained the pertinent information from their suppliers to assert non-infringement defenses, is misplaced. (D.I. at 132 at 9.) As set forth in their supporting declarations, the Customer Defendants do not have technical expertise or technical information regarding the LCD components included in the products they resell. (D.I. 110, Ex. C, ¶¶ 3-4; D.I. 112, Ex. C, ¶ 9; D.I. 113, Ex. A, ¶¶ 2-5.) Guardian has no basis to dispute these facts. If forced to litigate issues of non-infringement and invalidity, the Customer Defendants would be forced to rely heavily on discovery from the defendant manufacturers. The Customer Defendants would also have to rely heavily on experts and consultants, because, unlike the LCD manufacturer defendants, they do not have employees with the technical expertise necessary to assist with their defense. This highlights the prejudice and tactical disadvantages facing the Customer Defendants if a stay is not granted and they are forced to defend against this lawsuit.

Guardian's assertion that the Customer Defendants should be bound by an adverse ruling against the LCD manufacturers is not supported by any caselaw. (D.I. 132 at 10.) In *Refac Int'l, Ltd. v. IBM*, 790 F.2d 79 (Fed. Cir. 1986), the court did not, as Guardian suggests, bind stayed customer defendants to an injunction issued against manufacturer defendants. (D.I. 132 at 10.) Rather, the defendant customers "agreed to be *bound* by any injunction in this case," for reasons not explained by the court. *See Refac*, 790 F.2d at 81 (Fed. Cir. 1986) (emphasis in original). Furthermore, Guardian's assertions that the Customer Defendants should be bound by any decision adverse to the LCD manufacturers with respect to infringement issues is misplaced. (D.I. 132 at 10.) Under the patent exhaustion doctrine, Guardian can only obtain damages once for an alleged infringement, *i.e.*, patentees cannot collect twice from manufacturers and

customers for the same infringing product. Thus, any judgment (or settlements) obtained by Guardian with respect to the products manufactured or sold by a particular LCD manufacturer effectively eliminates any issue with respect to these products as to the Customer Defendants. Finally, there is no reason for what would clearly be an advisory ruling on this issue now. Whether certain rulings with respect to certain products are binding on certain defendants will be determined by the facts as they then exist.

Guardian's reliance on *Corning Glass Works v. U.S.*, 220 Ct. Cl. 605 (1979), is likewise misplaced. (D.I. 132 at 10.) Guardian misconstrues *Corning* as a case where reseller defendants were bound by a decision in an earlier case. (*Id.*) In *Corning*, the Court of Claims affirmed the stay issued against the United States, an accused, direct infringing customer in one lawsuit, while the plaintiff pursued its case against the principal defendant manufacturer in a separate proceeding. *Id.* at 605-07. Further, the *Corning* court noted that patent infringement suits against suppliers are favored over suits against customers – consistent with the Customer Defendants' position here. *Id.* at 605 (explaining that "[w]e see no reason why the principle favoring supplier's suits should not apply here to further the interest of judicial economy and to avoid duplicative discovery hearings").

Finally, Guardian's assertion that the issues in this case will not be simplified if a stay is granted is also wrong. (D.I. 132 at 11-13.) Guardian's statement that it "has specified that the accused products are LCD devices that use Fuji Wide View film" is not helpful to the Customer Defendants who do not know which LCD products they sell contain this film. (D.I. 132 at 12.) Despite multiple requests, and its Rule 11 obligations – which are very specific in patent cases – Guardian has failed to identify any of the

products sold by the Customer Defendants that allegedly infringe. Until Guardian identifies the accused products, the Customer Defendants are simply not in a position to determine which of their products might be accused of infringement. Rather than requiring the Customer Defendants to rely on the defendant LCD manufacturers for technical product information, this case would clearly be simplified if a stay is granted and the case moves forward against the defendant LCD manufacturers, the parties in the best position to address liability issues.

### V. NOW IS THE TIME TO SIMPLIFY THE PROCEEDINGS

Guardian also argues that "[i]t weighs in Guardian's favor, not the Movants, that discovery has not commenced and that a trial date has not been set." (D.I. 132 at 13.) According to Guardian, it is only with "discovery of the Movants" that Guardian can proceed. (*Id.*). Aside from the fact that Dell has offered, and the remaining Movants likewise offer, to provide information regarding their LCD suppliers, Guardian's argument flatly ignores the reasoning underlying the stay factors articulated in *CEA* and *Honeywell*. Specifically it is now, at a time when no discovery has transpired and no trial date has been set, in which a Court should make plans to simplify the litigation. As the Court in *Honeywell* explained,

> since a stay would not unduly prejudice Honeywell, it will vastly simplify the issues and the trial of the case against the manufacturer defendants, and *it comes at a time when discovery has not even begun and no trial date has been set.*

*See Honeywell*, slip op. at 9 (emphasis added). Thus, it is at the outset that litigation can be structured in a logical and efficient fashion and not, as Guardian suggests, some point mid-stream or mere weeks before the trial at a status conference. (D.I. 132 at 11.)

12

## CONCLUSION

For the reasons set forth above, Dell, Gateway and Lite-On respectfully request that the case against them be stayed pending resolution of the proceedings against the LCD manufacturer defendants.

|  |  |
|---|---|
| OF COUNSEL | POTTER ANDERSON & CORROON LLP |
| Roderick B. Williams<br>Avelyn M. Ross<br>VINSON & ELKINS L.L.P.<br>The Terrace 7<br>2801 Via Fortuna, Suite 100<br>Austin, Texas 78746-7568<br>TEL: (512) 542-8400<br>FAX: (512) 542-8612<br><br>*Attorneys for Defendant Dell Inc.* | By: /s/ Richard L. Horwitz<br>Richard L. Horwitz (#2246)<br>David E. Moore (#3983)<br>Hercules Plaza, 6th Floor<br>1313 N. Market Street<br>P.O. Box 951<br>Wilmington, DE 19899<br>Tel.: (302) 984-6000<br>rhorwitz@potteranderson.com<br>dmoore@potteranderson.com<br><br>*Attorneys for Defendants*<br>*Dell Inc., Gateway, Inc. and Lite-On, Inc.* |
| Robert J. Gunther, Jr.<br>Kurt M. Rogers<br>LATHAM & WATKINS LLP<br>885 Third Avenue<br>New York, N.Y. 10022<br>Tel.: (212) 906-1200<br><br>*Attorneys for Defendant Gateway, Inc.* | OF COUNSEL:<br><br>Laura P. Masurovsky<br>FINNEGAN HENDERSON FARABOW<br>GARRETT & DUNNER L.L.P.<br>901 New York Avenue, NW<br>Washington, D.C. 20001<br>TEL: (202) 408-4000<br>FAX: (202) 408-4400<br><br>*Attorney for Defendant Lite-On, Inc.* |

Dated: June 27, 2005

688231

13

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

## CERTIFICATE OF SERVICE

I, Richard L. Horwitz, hereby certify that on June 27, 2005, the attached document was hand delivered to the following persons and was electronically filed with the Clerk of the Court using CM/ECF which will send notification of such filing(s) to the following and the document is available for viewing and downloading from CM/ECF:

Richard K. Herrmann
Mary B. Matterer
Morris James Hitchens & Williams LLP
222 Delaware Avenue, 10th Floor
Wilmington, DE 19801

Josy W. Ingersoll
Young, Conaway, Stargatt & Taylor, LLP
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899-0391

Steven J. Balick
Ashby & Geddes
222 Delaware Avenue
P.O. Box 1150
Wilmington, DE 19899

Matthew W. King
Richards, Layton & Finger
One Rodney Square
P.O. Box 551
Wilmington, DE 19899-0551

Robert W. Whetzel
Richards, Layton & Finger
One Rodney Square
P.O. Box 551
Wilmington, DE 19899-0551

Gerald M. O'Rourke
Connolly Bove Lodge & Hutz LLP
The Nemours Building
1007 North Orange Street
P.O. Box 2207
Wilmington, DE 19899

William J. Marsden, Jr.
Fish & Richardson, P.C.
919 N. Market Street, Suite 1100
P.O. Box 1114
Wilmington, DE 19899-1114

I hereby certify that on June 27, 2005, I have Federal Expressed the documents to the following non-registered participants:

Bryan S. Hales
Craig D. Leavell
Meredith Zinanni
Eric D. Hayes
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, IL 60601

Peter J. Wied
Alschuler Grossman Stein & Kahan LLP
1620 26gh Street, 4th Floor, N Tower
Santa Monica, CA 90404-4060

Roderick B. Williams
Avelyn M. Ross
Vinson & Elkins
2801 Via Fortuna, Suite 100
Austin, TX 78746-7568

Eric L. Wesenberg
Kai Tseng
Rowena Young
Orrick, Herrington & Sutcliffe LLP
1000 Marsh Road
Menlo Park, CA 94025-1015

Jeffrey K. Sherwood
Akin Gump Strauss Hauer & Feld LLP
Robert S. Strauss Building
1333 New Hampshire Avenue, N.W.
Washington, DC 20036-1564

Teresa M. Corbin
Howrey LLP
525 Market Street, Suite 3600
San Francisco, CA 9410534

Robert C. Weems
Baum & Weems
58 Katrina Lane
San Anselmo, CA 94960

Kurt M. Rogers
Latham & Watkins LLP
885 Third Avenue
Suite 1000
New York, NY 10022-4834

E. Robert Yoches
Laura P. Masurovsky
Finnegan, Henderson, Farabow,
    Garrett & Dunner, L.L.P.
901 New York Avenue, N.W.
Washington, DC 20001

By: /s/ Richard L. Horwitz
Richard L. Horwitz
David E. Moore
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, Delaware 19899-0951
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

679634