# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| GUARDIAN INDUSTRIES CORP., | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No.: 05-27-SLR |
| v. | ) | |
| | ) | **Jury Trial Demanded** |
| DELL, INC.; GATEWAY, INC.; | ) | |
| HEWLETT-PACKARD COMPANY; ACER INC.; | ) | |
| ACER AMERICA CORPORATION; AOC INTERNATIONAL; | ) | |
| ENVISION PERIPHERALS, INC.; TPV TECHNOLOGY, LTD.; | ) | |
| TPV INTERNATIONAL (USA), INC.; | ) | |
| CHUNGHWA PICTURE TUBES, LTD. a/k/a | ) | |
| CHUNGHWA PICTURE TUBES COMPANY; | ) | |
| TATUNG COMPANY; TATUNG COMPANY OF AMERICA, INC.; | ) | |
| BOE HYDIS TECHNOLOGY COMPANY, LTD.; | ) | |
| BOE HYDIS AMERICA INC.; COMPAL ELECTRONICS, INC.; | ) | |
| HANNSTAR DISPLAY CORPORATION; JEAN CO., LTD.; | ) | |
| LITE-ON TECHNOLOGY CORPORATION: | ) | |
| LITE-ON, INC. a/k/a LITEON TRADING USA, INC.; | ) | |
| MAG TECHNOLOGY COMPANY, LTD.; | ) | |
| MAG TECHNOLOGY USA, INC.; | ) | |
| PROVIEW INTERNATIONAL HOLDINGS, LTD.; | ) | |
| PROVIEW TECHNOLOGY, INC.; | ) | |
| PROVIEW ELECTRONICS COMPANY, LTD.; and | ) | |
| QUANTA DISPLAY, INC. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## GUARDIAN'S CONSOLIDATED OPPOSITION
## TO THE DEFENDANTS' MOTIONS TO STAY

Richard K. Herrmann (I.D. No. 405)
Mary B. Matterer (I.D. No. 2696)
MORRIS JAMES HITCHENS & WILLIAMS
222 Delaware Avenue, 10th Floor
Wilmington, Delaware 19801
302.888.6800
rherrmann@morrisjames.com

Bryan S. Hales
Craig D. Leavell
Meredith Zinanni
Eric D. Hayes
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois 60601
312.861.2000

*Counsel for Plaintiff Guardian Industries Corp.*

Dated:  July 22, 2005

# TABLE OF CONTENTS

BACKGROUND .................................................................................................................1

ARGUMENT......................................................................................................................4

    I.     Guardian Will Be Prejudiced And Disadvantaged By A Stay................................5

          A.     Discovery Will Be Required From The Movants. .......................................5

          B.     A Stay Would Only Foster Additional Litigation and
               Reduce Efficiency.........................................................................................6

          C.     The Movants Are Not "Pure Customers." ...................................................8

    II.    The Movants Are Not Prejudiced By Continuing In This Case. ..........................10

          A.     The Movants Are Best Served By Litigating Infringement
               And Validity Issues With The LCD Module Manufacturers.....................10

          B.     This Case Will Not Produce Duplicative Discovery. ................................12

    III.   A Stay Will Not Simplify This Case.....................................................................13

          A.     The Proper Trial Management Of This Case Should Be
               Determined After Discovery.......................................................................13

          B.     The Issues Of This Case Will Not Be Simplified If A Stay
               Is Granted...................................................................................................14

    IV.   The Current Status Of This Case Weighs In Guardian's Favor, Not
        The Movants'.......................................................................................................15

CONCLUSION................................................................................................................16

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Air Products and Chemicals, Inc. v. MG Nitrogen Services L.L.C.*,
    133 F. Supp. 2d 354 (D. Del. 2001)........................................................................ 9

*Argos v. Orthotec LLC*,
    304 F. Supp.2d 591 (D. Del. 2004)........................................................................ 5

*Corning Glass Works v. U.S.*,
    220 Ct. Cl. 605 (1979) ......................................................................................... 12

*Kahn v. General Motors Corp.*,
    889 F.2d 1078 (Fed. Cir. 1989).................................................................... 5, 7, 9

*Landis v. North American Co.*,
    299 U.S. 248 (1936)............................................................................................... 4

*Refac Int'l, Ltd. v. IBM*,
    790 F.2d 79 (Fed. Cir. 1986).............................................................................. 12

Guardian opposes the numerous Motions to Stay this case[1] because, contrary to the Movants' assertions, the LCD module manufacturers cannot provide all the information and relief to which Guardian is entitled. The Movants are carrying out activities in the United States that are accused of infringement, and as direct infringers, the information they have and relief they can provide is key to Guardian's ability to enforce its patents. A stay would not simplify the issues before the Court, but rather would complicate the discovery process and unduly prejudice Guardian's attempt to obtain full recovery for infringement of its patents.

## BACKGROUND

Guardian filed this suit on January 19, 2005 and later added several parties by amendment, naming 33 defendants in total. (D.I. 1, 50.) Many of the defendants are related companies, such that a total of 19 "defendant groups" were named as parties to this action. Four defendant groups, both LCD module manufacturers and original equipment manufacturers ("OEMs"), have already settled and taken licenses to Guardian's patents, leaving a total of 15 defendant groups in this case. In addition, Guardian has recently reached an agreement in principle to license and settle with another defendant. Eleven defendant groups have moved to stay the case against them. (D.I. 109, 111, 113-14, 122, 125, 138-39, 147-50, 155.) A chart illustrating the defendant groups and their status can be found at Exhibit A.

---

[1]    The Court granted Guardian's motion to file a consolidated opposition brief. (D.I. 120.) Accordingly, to ease the Court's burden, this opposition opposes all Motions to Stay, namely those filed by Dell, Gateway, Lite-On, Tatung and Jean, HP, Envision and TPV, Acer, Compal, Proview Holdings, Proview Electronics, Proview Tech, MAG Tech, and MAG USA (collectively, "the Movants"). (D.I. 109, 111, 113-14, 122, 125, 138-39, 147-50, 155.)

All defendants have been served,[2] and all but three defendant groups (Hannstar, BOE HYDIS, and the Envision/TPV entities) have answered. Of the four non-moving defendant groups, three have reserved the right to challenge the personal jurisdiction of this Court over them—LCD module manufacturers BOE HYDIS, Hannstar and Quanta. (D.I. 70, 83, 89.)

The patents-in-suit all relate to the use of retardation films to improve the viewing angle of LCD monitors. Guardian asserted the same patents in this Court in C.A. No. 1:03-cv-00934-SLR, filed October 7, 2003 ("Guardian I") against LCD module manufacturers, OEMs, and resellers. That action was terminated on February 28, 2005, after all 14 defendants (7 defendant groups) settled and took licenses to the patents. No stay was entered in Guardian I, yet the litigation was resolved efficiently and effectively before fact discovery had closed and before expert discovery was conducted.

There are generally three stages in the LCD supply chain: (1) LCD module manufacturers, which manufacture the LCD module, (2) OEMs, which incorporate the LCD module into an LCD monitor, and (3) resellers, which sell the LCD monitor to consumers. (D.I. 110 at 1; D.I. 112 at 3; Ex. B.) However, one company may have operations at more than one stage of the supply chain; for example, Dell states that it both "purchases LCDs as components for Dell products" and "purchases products containing LCDs as components." (D.I. 110 at 3; *see also* D.I. 115 at 1 (stating that Tatung, Tatung America, and Jean purchase both LCD modules and completed products containing LCD

---

[2]  Guardian has been informed that AOC International ceased to be in the monitor business in December 1997, and never sold LCD monitors. Guardian expects to stipulate to a dismissal without prejudice of AOC International from this case.

modules); D.I. 123 at 2-3 ("HP purchases LCDs either as component parts to be included in HP products, or in integrated products that contain LCD components"); D.I. 147 at 2 (stating MAG Tech previously operated as an OEM, and now resells fully assembled LCD monitors); Ex. B (showing Proview as both OEM and reseller).)  Also, some of the defendants in different stages of the supply chain are related, such as LCD module manufacturer Chunghwa Picture Tubes ("CPT") and OEM/reseller Tatung.  (Ex. C.) Unlike Honeywell in the case Movants recurrently cite, Guardian has named LCD module manufacturers and OEMs, as well as resellers, as defendants.  (*See* Ex. D at 25:8-21.)  It makes the most sense for defendants of all types to remain in the case.  But notably, in light of their potential challenges to personal jurisdiction, it is not yet certain that LCD module manufacturers BOE HYDIS, Hannstar and Quanta will remain present, which would leave Guardian with recourse against only the Movants as to products from those LCD module manufacturers.

The resellers are the driving force in the market, as they set the specifications and create demand for their LCD monitors.  (D.I. 112 at 4.)  OEMs and LCD module manufacturers respond by manufacturing monitors that meet the specifications required by the resellers—a key requirement being wide viewing angles.  (*Id.*)  Although the resellers may not specify the manner by which wide viewing angles are achieved, their demand for this feature drives the use of the technology claimed in the patents-in-suit.

As Guardian told the Court and the Guardian I defendants, and as Guardian has told the defendants in this case, the only retardation films that Guardian is aware are used commercially in the LCD monitors at issue are Fuji Wide View films.  Thus, the infringement issues for all parties and all accused products are largely the same.  As in

this case, the defendants in Guardian I were both LCD module manufacturers and resellers. They raised trial management issues such as the need for and order of separate trials during the scheduling discussions in that case. As a result, the Court in Guardian I added to the Scheduling Order a Status Conference to be held shortly before trial, at which time such trial management issues would be decided. (Ex. E ¶ 3.) The Scheduling Order in this case similarly includes a Status Conference roughly one month before the proposed trial date for determining trial management issues. That the ratio of LCD module manufacturers to OEM and resellers in the suit is different here than in Guardian I does not change that the Court's approach in Guardian I and as planned here is most efficient. (*See* D.I. 147-150, 155.)

Discovery began on July 20, 2005, with the exchange of initial disclosures by Guardian, CPT, and Quanta, which included an identification of LCD products believed to include Fuji Wide View film. The Movants are scheduled to respond with their initial disclosures on August 10, 2005, including a list of their products that incorporate the LCD products identified by Guardian and the LCD module manufacturers in their initial disclosures.

## ARGUMENT

The Motions to Stay should be denied because a stay will prejudice Guardian's ability to get complete discovery and relief, without simplifying the issues in this case. Staying this case would result in inefficiencies by complicating the discovery process and increasing the likelihood of multiple trials.

Courts have the inherent power to manage their dockets, balancing the competing interests of the courts, counsel, and litigants. *Landis v. North American Co.*, 299 U.S. 248, 254-55 (1936). The decision whether to stay this case is firmly within the discretion

of the Court. *Argos v. Orthotec LLC*, 304 F. Supp.2d 591, 598 (D. Del. 2004). To determine whether a stay is appropriate, this Court should consider: (1) whether Guardian will be unduly prejudiced or tactically disadvantaged by a stay; (2) whether the issues in question and trial of the case will be simplified by a stay; and (3) whether discovery has been completed and a trial date set. *Id.* "The party requesting a stay 'must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else.'" *Kahn v. General Motors Corp.*, 889 F.2d 1078, 1083 (Fed. Cir. 1989) (quoting *Landis*, 299 U.S. at 255). Guardian will be prejudiced by a stay, and the Movants have not shown clear hardship or inequity. Accordingly, the Motions to Stay should be denied.

## I.    Guardian Will Be Prejudiced And Disadvantaged By A Stay.

The Movants argue that Guardian will not be prejudiced or disadvantaged by a stay because it will get all the discovery and relief it needs from the LCD module manufacturers. This is not the case. Guardian requires discovery from the Movants in order to, among other things, identify the infringing LCD modules that are sold in the U.S. The Movants are likely the only source of that information. Additionally, if Guardian is successful but only the LCD module manufacturers are enjoined, Guardian would be required to conduct continuing, piecemeal litigation in order to recover for the Movants' infringement.

### A.    Discovery Will Be Required From The Movants.

The Movants argue that the OEMs and resellers in this case should be stayed while the case against the LCD module manufacturers proceeds because all discovery can be provided by the LCD module manufacturers. (D.I. 110 at 1, 8; D.I. 112 at 1, 10; D.I. 113 at 2; D.I. 115 at 1; D.I. 123 at 1, 8; D.I. 125 at 1; D.I. 138 at 1; D.I. 139 at 1; D.I. 147

at 1; D.I. 148 at 1; D.I. 149 at 1; D.I. 150 at 1; D.I. 155 at 1.)  Yet in Guardian I, except

for a small minority of direct sales, the LCD module manufacturers asserted they did not

know which of their accused products reached the U.S.  (Ex. E ¶ 4.)  The LCD module

manufacturers in this case, which are Taiwanese and Korean corporations, may similarly

argue that they sell LCD modules to OEMs outside the U.S. and do not know which of

their modules are then imported and sold in the U.S.  If all activity against the Movants is

stayed, Guardian will be forced to pursue costly and time-consuming international

discovery, through the Hague Convention or letters rogatory, against those foreign OEMs

to which the LCD modules are sold in order to determine which modules reach the U.S.

The Movants, on the other hand, can readily provide that information through

discovery.  The resellers and OEMs can readily identify the LCD monitors that they sell

in the U.S. or to entities in the U.S., as well as the suppliers of the LCD monitors and the

LCD modules used in those monitors.  The Court should not stay the case against OEMs

and resellers that have information showing direct infringement in favor of complicated,

expensive, time-consuming international discovery from third parties.  As Judge Jordan

said in the *Honeywell* case, the first front in the war is finding out "who is doing the

manufacturing and supplying for who and for what products."  (Ex. D at 45:25-46:6

(stating plaintiffs will be allowed some discovery from all parties).)  The Movants know

where their LCD monitors are sold and who supplied them.  Guardian needs continuing

discovery of that information.

### B.    A Stay Would Only Foster Additional Litigation and Reduce Efficiency.

To provide Guardian full recovery for the infringement of its patents, the case

should proceed against all named parties.  A stay as to resellers in favor of a suit against

the manufacturers is inappropriate where there may be additional suppliers of the infringing products.  *See Kahn*, 889 F.2d at 1082.

Here, the majority of the Movants admit that not all of their suppliers are named in this lawsuit or licensed by Guardian.  (D.I. 112, Ex. C ¶ 6 (the "vast majority," but not all, of Gateway's suppliers are co-defendants or licensees); D.I. 113, Ex. A ¶ 6 (naming as "other LCD suppliers" IBM Singapore and Fujitsu Microelectronics Asia, among others); D.I. 123 at 4 ("the bulk of the HP products containing LCDs sold by HP in the United States appear to be supplied by" licensees or co-defendants); D.I. 125 at 2 (TPV's suppliers "include" co-defendants, and not listing any suppliers for Envision and TPVI); D.I. 139, Ex. A ¶ 4 (naming as "other LCD manufacturers that supply Compal" Innolux and Toppoly Optoelectronics); D.I. 148, Ex. A ¶ 5 (the "vast majority", but not all, of Proview Electronics' suppliers are co-defendants or licensees); *see also* D.I. 147, 150 and 155 (failing to name suppliers).)  Dell raises the possibility that "numerous LCD module manufacturers" may be impleaded through third-party practice, but does not identify any such LCD module manufacturer.  (D.I. 110 at 4.)  And there is no guarantee that there will not be a new participant in the industry in the future, whether an LCD module manufacturer or OEM.  Guardian should not be required to pursue additional litigation in the future against these unnamed and, in some cases, unknown entities when the Movants are in front of the Court now and can answer for their direct infringement of Guardian's patents.

In addition, LCD module manufacturers BOE HYDIS, Hannstar, and Quanta have reserved the right to challenge the personal jurisdiction of this Court over them.  (D.I. 70, 83, 89.)  They have not, as Seiko Epson did in the *Honeywell* case, assured Guardian that

they will stand behind their products and customers. (*See* Ex. D at 16:21-17:2.) Again, it does not make sense to require a second stage of litigation against the OEMs and resellers should any of their suppliers not be captured by this litigation, when the direct infringers of Guardian's patents are before the Court now. This is particularly true as the infringement issues regarding the accused products are the same, as a result of their ubiquitous use of Fuji Wide View films.

The named OEMs and resellers account for a large percentage of the unlicensed U.S. LCD monitor market, and thus an injunction against those entities in addition to the LCD module manufacturers provides relief to Guardian for a majority of the U.S. market. Importantly, such an injunction would protect Guardian regardless of whether there are new manufacturer or OEM entrants to the market, manufacturers or OEMs over which this Court may lack jurisdiction, or unnamed OEMs. The impact is significant— according to industry research group DisplaySearch, there are, for example, over 30 OEMs. (Ex. B.) Some of them are small enough that pursuit through additional lawsuits would be inefficient and needlessly prejudicial to Guardian.

Guardian has named both manufacturing and non-manufacturing parties in order to efficiently protect its interests with minimal litigation. All of the defendants—not just the LCD module manufacturers—are infringing Guardian's patents, and Guardian should not have its ability to achieve relief prejudiced by a stay of the case against the direct infringers that are located in the U.S and dealing directly with U.S. customers.

## C.    The Movants Are Not "Pure Customers."

The Movants claim they are "pure customers," such that the case against them would be subject to the customer suit exception, which favors a case against a

manufacturer over a case against a customer. (D.I. 110 at 4; D.I. 123 at 3; D.I. 125 at 1; D.I. 138 at 1; D.I. 139 at 1; D.I. 147 at 2; D.I. 148 at 2; D.I. 150 at 2; D.I. 155 at 2.)  But the customer suit exception applies only when an action against the manufacturer would "resolve all charges against the customers in the stayed suit, including liability for damages." *Kahn*, 889 F.2d at 1081.  As discussed above, that is not the case here.  The suit against the LCD module manufacturers will not resolve the case against the Movants for products from non-named suppliers, or from suppliers who do not remain in the case. Moreover, where the alleged customer is also the direct infringer, the customer suit exception does not apply. *Air Products and Chemicals, Inc. v. MG Nitrogen Services L.L.C.*, 133 F. Supp. 2d 354, 357 (D. Del. 2001).  The Movants are entities offering these products for sale and selling them in or to the U.S.  They are the direct infringers, and the customer suit exception does not apply.

Furthermore, by the Movants' own admissions, they are not simply customers, but also purchase the LCD modules and incorporate them into LCD monitors.  The Movants' briefs also demonstrate that the lines between LCD module manufacturer, OEM, and reseller are not clear cut.  For example, CPT, an LCD module manufacturer, is a subsidiary of Tatung, an OEM.  (Ex. C.)  Dell calls itself a customer, yet its wholly-owned subsidiary, Dell Global Procurement Malaysia, is identified as a supplier by Lite-On.  (D.I. 113, Ex. A ¶ 6.)  Lite-On, an OEM, identifies Acer as one of its suppliers, but Acer names Lite-On as one of its suppliers.  (D.I. 113, Ex. A ¶ 6; D.I. 138, Ex. A ¶ 3.) Dell labels Acer another customer defendant.  (D.I. 110 at 3.)  Dell, Gateway, and HP all named Lite-On as a supplier.  (D.I. 110 at 3; D.I. 112 at 5 n.5; D.I. 123 at 2.)  HP and Acer name Compal and TPV as suppliers.  (D.I. 123 at 2; D.I. 138, Ex. A ¶ 3.)  Jean

supplies Gateway and Acer. (D.I. 112 at 5 n.5; D.I. 138, Ex. A ¶ 3.) Tatung supplies HP. (D.I. 123 at 2.) MAG supplies Gateway. (D.I. 112 at 5 n.5.) Proview supplies Acer. (D.I. 138, Ex. A ¶ 3.) In short, the Movants are both suppliers and resellers, not "pure customers." The Movants are the direct infringers, able to identify which monitors are sold in the U.S. and to trace the supply chain of those monitors. Cutting off discovery before reaching those sales will prejudice Guardian by denying it information necessary to its case.

## II.    The Movants Are Not Prejudiced By Continuing In This Case.

The Movants suffer no more, and likely less, "prejudice" than any other defendant called to answer for its infringing activities. In fact, the Movants are better served by litigating now, with the LCD module manufacturers, than they would be by litigating later on their own.

### A.    The Movants Are Best Served By Litigating Infringement And Validity Issues With The LCD Module Manufacturers.

The Movants claim that they lack the technical information necessary to defend against Guardian's claims of infringement. (D.I. 110 at 4, 9; D.I. 112 at 9-10; D.I. 113 at 1; D.I. 115 at 1; D.I. 123 at 1; D.I. 125 at 2; D.I. 138 at 1; D.I. 139 at 1; D.I. 147 at 2; D.I. 148 at 2; D.I. 149 at 2; D.I. 150 at 2; D.I. 155 at 2.) Yet each Movant asserted non-infringement as an affirmative defense (D.I. 63, 74, 75, 79, 81, 86, 91, 93, 95, 96, 97), and many asserted counterclaims of non-infringement (D.I. 63, 74, 75, 79, 81).[3] Assuming they had a good faith basis to make such assertions, they must either have sufficient information about the LCD modules, or have relationships with their suppliers

---

[3]    The Envision/TPV entities are scheduled to answer on August 1, 2005.

such that they were able to acquire sufficient information.  There is no reason why they cannot defend themselves in this case under either scenario.

The Movants also raised invalidity affirmative defenses and counterclaims.  (D.I. 63, 74, 75, 79, 81, 86, 91, 93, 95, 96, 97.)  Asserting invalidity does not require detailed technical information about the accused products, but rather publicly available prior art. There is no legitimate basis for the Movants to argue they are unable to address issues regarding the validity and enforceability of the patents-in-suit.

In any event, if the Movants do lack the necessary information about their products to defend against Guardian's claims, they are better served by litigating these issues with the LCD module manufacturers that do have the information.  At a minimum, the Movants will have ready access to discovery from the LCD module manufacturers, and more likely, cooperation from the LCD module manufacturers.  Letters rogatory or other international discovery will not be required, as may be argued.[4]  (*See* D.I. 135 at 7 n.5.)  Or, if their interest is to have the LCD module manufacturers take the laboring oar in defense, the Movants can stand by while the LCD module manufacturers press the defense, as some defendants did in Guardian I.  (*See* Ex. E ¶ 5.)  At least one Movant has claimed that the OEMs and resellers are indemnified by the LCD module manufacturers. (D.I. 112 at 1.)  In sum, to the extent the Movants want to put on a defense to these claims, in particular with regard to those products supplied by entities not parties to this case, the time to do it is now.

---

[4]    Of course, if an LCD module manufacturer that supplies one of the Movants is not in the case, for example by virtue of jurisdictional challenges, that weighs against Movants' request for a stay. *See supra* at 7.

Alternatively, the Movants should be bound by their statements that they are unable to defend themselves against Guardian's claims, and thus be bound by any decision adverse to the LCD module manufacturers, just as they seek to benefit should the LCD module manufacturers prevail on validity or infringement grounds. (*See* D.I. 110 at 7; D.I. 112 at 8; D.I. 113 at 2; D.I. 123 at 7.) If the case against them is stayed, and the LCD module manufacturers are found to infringe, the Movants should not be given a second bite at the apple by which they can challenge the findings of the Court as to infringement issues regarding LCD monitors with Fuji Wide View film and the validity and enforceability of the patents. *See Refac Int'l, Ltd. v. IBM*, 790 F.2d 79, 81 (Fed. Cir. 1986) (stayed defendants bound to any injunction issued against manufacturers); *Corning Glass Works v. U.S.*, 220 Ct. Cl. 605 (1979) (two cases "involve the same patents" and thus "the same issues of validity and infringement," so if plaintiff prevails in first proceeding, "only an accounting trial might be necessary" with regard to stayed defendant). Entering a stay, only to have later litigation or litigations on the same infringement issues regarding LCD monitors with Fuji Wide View film, or the same invalidity and unenforceability issues, would be a needless waste of resources.

### B.    This Case Will Not Produce Duplicative Discovery.

The Movants also wrongly argue that they will be prejudiced because any discovery they can provide would be duplicative. (*See* D.I. 110 at 8; D.I. 112 at 10; D.I. 123 at 8.) As discussed above, only the Movants have full information regarding the sales of relevant LCD monitors in the U.S. As for technical information about the LCD modules, the Movants claim that they do not have any information about the products. If true, there will be no duplicative discovery. If not, the information the Movants possess

is relevant, not duplicative. The Movants are not "prejudiced" by fulfilling their discovery obligations.

### III.     A Stay Will Not Simplify This Case.

Contrary to the statements made by the Movants, a stay will not simplify the issues in this case. The proper management of trial can be determined closer to trial, when the remaining parties are known and the full scope of the issues to be tried is understood. Discovery involving only Guardian and the LCD module manufacturers will not simplify the case, but rather will leave gaps in the information necessary to thoroughly address the issues and efficiently manage the schedule of trial in this case.

#### A.     The Proper Trial Management Of This Case Should Be Determined After Discovery.

The Scheduling Order includes a Status Conference on March 1, 2007, roughly one month before the trial date. At that time, the Court will determine whether separate trials are appropriate, and if so, the order in which the defendants' trials should proceed, such that the issues pertaining to trial logistics raised in the *Honeywell* and *CEA* cases are not relevant. The Court took this approach in Guardian I, and that case was resolved efficiently and effectively before the close of fact discovery. (D.I. 43 ¶ 11 from C.A. No. 1:03-cv-00934-SLR.) The fact that the defendants in Guardian I did not request a stay does not make this approach any less sensible. Under this approach, proceeding with all discovery now and staging trials consecutively, the Court will have to prepare for trial only once. Defendants, on the other hand, would add a year or more to the case by requiring discovery to start afresh after the cases against the LCD module manufacturers. There is no need to drag this case out over three to four years. That there may be several defendants remaining for trial, or numerous products in dispute, is not sufficient reason to

13

stay all discovery from the Movants—especially given that the products at issue will have Fuji Wide View film in common. The sensible course is to proceed against all defendants now, and make trial management decisions at the Status Conference.

Movants have raised Guardian's track record of reaching settlement and license agreements with various parties in support of their motion for stay. (D.I. 112 at 9; D.I. 123 at 7; D.I. 135 at 4.) In reality, this track record supports denial of the stay motions. First, the Movants ignore that Guardian has reached settlement with and granted license agreements to not only LCD module manufacturers, but also OEMs and resellers. Second, three of the settlement and license agreements in Guardian I (with both LCD module manufacturers and resellers) followed mediation before Magistrate Judge Thygne. If a stay is entered, there would be no exchange of information allowing Guardian and the Movants to make value assessments regarding the case, and no opportunity to mediate to resolution. Third, if history is any indication, additional parties may take licenses. Indeed, one agreement in principle has recently been reached. Each LCD module manufacturer or OEM that takes a license has the potential to remove products of the Movants from issue, but the extent to which that happens can only be known if the Movants are subject to discovery in the case. Thus, denying the Movants' motion will allow the parties to develop a record that will be relevant at the trial management Status Conference.

**B.    The Issues Of This Case Will Not Be Simplified If A Stay Is Granted.**

The Movants also argue that Guardian's "failure to identify the specific 'LCDs and related products' accused of infringement" supports a stay. (D.I. 110 at 3-4; D.I. 112 at 5.) But given the large number and variety of models sold by the Movants, including

changes in product offerings over time, Guardian could not—on day one—specify by model number all of the accused products.  In any event, that argument has been mooted by the staged discovery already underway per the Court's directive at the Scheduling Conference.  Guardian and the LCD module manufacturers have now identified those LCD devices believed to include Fuji Wide View film—the first step towards defining the universe of accused products.  The Movants will shortly identify their products incorporating the LCD devices listed by Guardian and the LCD module manufacturers.

It is worth noting that in Guardian I, the resellers were able to identify, either on their own or with help from Guardian, which of their products contained Fuji Wide View film.  (Ex. E ¶ 6.)  That was true notwithstanding that the resellers in Guardian I initially took the same position as the resellers here—that it was not possible for them to do so. (*Id.*)

### IV.    The Current Status Of This Case Weighs In Guardian's Favor, Not The Movants'.

The Movants argue that it weighs in favor of a stay that discovery has not started and a trial date has not been set.  This is no longer the case—Guardian and the LCD module manufacturers have provided all parties with their initial disclosures and preliminary product identifications, and a trial date of April 2, 2007 has been set. Furthermore, the Movants make this blanket statement with no support.  But as shown above, the early stage of this case weighs against a stay.  Only with discovery of the Movants can the scope of the disputes be framed, and the trial management issues are best resolved at the pre-trial Status Conference, after discovery has been taken of all parties.

## <u>CONCLUSION</u>

For all of the foregoing reasons, Guardian respectfully requests that this Court deny the Movants' Motions to Stay.

Dated:  July 22, 2005

___*/s/ Richard K. Herrmann*_____

Richard K. Herrmann (I.D. No. 405)
Mary Matterer (I.D. No. 2696)
MORRIS JAMES HITCHENS & WILLIAMS
222 Delaware Avenue, 10th Floor
Wilmington, Delaware 19801
302.888.6800
rherrmann@morrisjames.com

Bryan S. Hales
Craig D. Leavell
Meredith Zinanni
Eric D. Hayes
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

*Counsel for Plaintiff Guardian Industries Corp.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 22nd day of July, 2005, I electronically filed the foregoing document, **GUARDIAN'S CONSOLIDATED OPPOSITIONS TO THE DEFENDANTS' MOTIONS TO STAY**, with the Clerk of the Court using CM/ECF which will send notification of such filing to the following:

Richard L. Horwitz, Esq.
David E. Moore, Esq.
Potter Anderson & Corroon
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE  19801

Robert W. Whetzel, Esq.
Matthew W. King, Esq.
Richards, Layton & Finger, P.A.
One Rodney Square
Wilmington, DE  19801

Steven J. Balick, Esq.
John G. Day, Esq.
Ashby & Geddes
222 Delaware Avenue,17[th] Floor
Wilmington, DE  19801

Josy W. Ingersoll, Esq.
Young, Conaway, Stargatt & Taylor LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE  19801

William Marsden, Esq.
Sean P. Hayes, Esq.
Fish & Richardson
919 N. Market Street, Suite 1100
Wilmington, DE  19801

Additionally, I hereby certify that on the 22nd day of July, 2005, the foregoing document was served via email on the following non-registered participants:

Daniel T. Shvodian, Esq.
Teresa M. Corbin, Esq.
Howrey LLP
301 Ravenswood Avenue
Menlo Park, CA  94025-3434
shvodiand@howrey.com
corbint@howrey.com

Roderick B. Williams, Esq.
Avelyn M. Ross, Esq.
Vinson & Elkins
2801 Via Fortuna, Suite 100
Austin, TX  78746-7568
rickwilliams@velaw.com
aross@velaw.com

York M. Faulkner, Esq.
Finnegan Henderson Farabow Garrett & Dunner
Two Freedom Square
11955 Freedom Drive
Reston, VA  20190-5675
york.faulkner@finnegan.com

E. Robert Yoches, Esq.
Laura P. Masurovsky, Esq.
Finnegan Henderson Farabow Garrett & Dunner
901 New York Avenue, N.W.
Washington, D.C.  20001
bob.yoches@finnegan.com
laura.masurovsky@finngan.com

17

Michael Bettinger, Esq.
Preston Gates & Ellis LLP
55 Second Street, Suite 1700
San Francisco, CA  94105-3493
mikeb@prestongates.com

Jeffrey K. Sherwood, Esq.
Akin Gump Strauss Hauer & Feld
1333 New Hampshire Avenie, NW
Washington, DC  20036
jsherwood@akingump.com

Keven M. O'Brien, Esq.
Baker & McKenzie
815 Connecticut Avenue, N.W.
Washington, D.C.  20006
boehydis@bakernet.com

Eric Wesenberg, Esq.
Kai Tseng, Esq.
Orrick Herrington & Sutcliffe
1000 Marsh Road
Menlo Park, CA  94025
ewesenberg@orrick.com
ktseng@orrick.com

Terry D. Garnett, Esq.
Paul Hastings Janofsky & Walker LLP
515 South Flower Street, 25th Floor
Los Angeles, CA  90071
terrygarnett@paulhastings.com

Kevin R. Hamel, Esq.
Aaron Ettelman, Esq.
Akin Gump Strauss Hauer & Feld
One Commerce Square
2005 Market Street, Suite 2200
Philadelphia, PA  19103
khamel@akingump.com
aettelman@akingump.com

Robert C. Weems, Esq.
Baum & Weems
58 Katrina Lane
San Anselmo, CA  94960
rcweems@comcast.net

Robert J. Gunther, Jr., Esq.
Kurt M. Rogers
Latham & Watkins
885 Third Avenue
New York, NY  10022
robert.gunther@lw.com
kurt.rogers@lw.com

    /s/ Richard K. Herrmann
Richard K. Herrmann (I.D. No. 405)
Mary B. Matterer (I.D. No. 2696)
MORRIS, JAMES, HITCHENS & WILLIAMS
222 Delaware Avenue, 10th Floor
Wilmington, Delaware 19801
302.888.6800
rherrmann@morrisjames.com
mmatterer@morrisjames.com

*Counsel for Plaintiff Guardian Industries Corp.*