# EXHIBIT A



**FINNEGAN
HENDERSON
FARABOW
GARRETT &
DUNNER LLP**

901 New York Avenue, NW ▪ Washington, DC 20001-4413 ▪ 202.408.4000 ▪ Fax 202.408.4400
www.finnegan.com

LAURA P. MASUROVSKY
202.408.4043
laura.masurovsky@finnegan.com

March 6, 2006

*Via Email & U.S. Mail*
Bryan Hales, Esq.
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, IL 60601

   *Guardian Industries Corp. v. Dell, Inc., et al.*
   USDC - D. Del. Case No. 05-0027SLR

Dear Mr. Hales:

  In its Initial Disclosures, Guardian identified one Lite-On part number (15AAC) as a product Guardian believed to contain Fuji Wide View film. If the settlement with Chungwha Picture Tubes ("CPT") is finalized, the Lite-On product identified by Guardian will contain LCD modules from a licensed manufacturer. Lite-On's Initial Disclosures identified other manufacturers of LCD modules as sources for Lite-On's products, all are now licensed. No other Lite-On products have been accused of infringement, and it appears that Guardian has not produced any documents regarding any other Lite-On product.

  Thus, a dismissal of the infringement claims against Lite-On is appropriate. Please let me know if Guardian will stipulate to a dismissal of the claims against Lite-On.

  If not, in order to allow Lite-On to prepare for the teleconference with the Magistrate, please identify by Wednesday, March 8, the model number of all Lite-On products that remain accused of infringement (presuming that a final settlement agreement is entered with CPT) and please identify any documents produced by Guardian that support Guardian's contention that those products infringe the asserted patents.

          Sincerely,

          Laura P. Masurovsky

Washington, DC ▪ Atlanta, GA ▪ Cambridge, MA ▪ Palo Alto, CA ▪ Reston, VA ▪ Brussels ▪ Taipei ▪ Tokyo



Howrey LLP
1950 University Avenue. 4th Floor
East Palo Alto. CA 94303
www.howrey.com

**Daniel T. Shvodian**
Partner
T 650 798 3550
F 650 798 3600
ShvodianD@howrey.com

March 1, 2006

FILE: 01450 0010 000000

**VIA EMAIL & U.S. MAIL**
312.660.8036

Bryan Hales, Esq.
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, IL 60601

Re:   *Guardian Industries Corp. v. Dell, Inc., et al.*
      U.S.D.C. – D. Del. Case No. 05-0027 SLR

Dear Mr. Hales:

In its Initial Disclosures, Guardian identified four Jean part numbers as products Guardian believed to contain Fuji Wide View film. If the settlement with Chungwha Picture Tubes ("CPT") is finalized, each of those Jean products will contain LCD modules from licensed manufacturers: JT166M18 (CPT); JT166M48 (Hannstar); JT166MP18 (CPT); and JT166MP48 (Hannstar). No other Jean products have been accused of infringement, and it appears that Guardian has not produced any documents regarding any other Jean products.

Thus, a dismissal of the infringement claims against Jean is appropriate. Please let me know if Guardian will stipulate to a dismissal of the claims against Jean.

If not, in order to allow Jean to prepare for the teleconference with the Magistrate, please identify by Monday, March 6, the model number of all Jean products that remain accused of infringement (presuming that a final settlement agreement is entered with CPT) and please identify any documents produced by Guardian that support Guardian's contention that those products infringe the asserted patents.

Sincerely,

*/s/ Daniel T. Shvodian*

Daniel T. Shvodian

DM_US\8318818 v1

# EXHIBIT B

# KIRKLAND & ELLIS LLP

AND AFFILIATED PARTNERSHIPS

200 East Randolph Drive
Chicago, Illinois 60601

|  |  |  |
|---|---|---|
| Bryan S. Hales<br>To Call Writer Directly:<br>312 861-2119<br>bhales@kirkland.com | 312 861-2000<br><br>www.kirkland.com | Facsimile:<br>312 861-2200 |

March 8, 2006

**VIA FACSIMILE**

Daniel T. Shvodian, Esq.
Howrey LLP
1950 University Avenue, 4th Floor
East Palo Alto, CA 94303

      Re:   *Guardian Industries Corp. v. Dell, Inc., et al.*

Dear Dan:

    I write in response to your letters dated March 1, 2006 regarding Jean, Tatung, and Tatung America.

    Guardian will not stipulate to a dismissal of the claims against Jean, Tatung, and Tatung America, as you request. Guardian will dismiss the case against these parties only if they either (1) settle the case with Guardian under the terms proposed by Robert Gorlin in his letter dated November 8, 2005, or (2) provide adequate representations that they do not sell monitors containing unlicensed LCD modules that use Fuji Wide View Film. An adequate representation would include:

- A written representation setting forth the steps the defendant took to confirm that it has no unlicensed LCD module suppliers, or, if it does have unlicensed LCD module suppliers, to confirm that that the LCD modules purchased from those unlicensed suppliers do not contain Fuji Wide View Film; and

- A written confirmation that the defendant does not sell any LCD products, either in the U.S. or abroad, that incorporate unlicensed LCD modules containing Fuji Wide View Film.

    Should Jean, Tatung and Tatung America have difficulty determining whether any unlicensed LCD modules use Fuji Wide View Film, Guardian is willing to assist them. It is our understanding that OEMs and resellers possess documents, such as specifications, for each of their products, and that such specifications often identify which products include retardation film. In addition, by disassembling an LCD module it is possible to tell whether the module utilizes retardation film. Both approaches present a relatively quick way to determine which unlicensed LCD modules incorporated into Jean, Tatung, and Tatung America products include film. If Jean, Tatung, and Tatung America are unwilling or unable to perform these tests,

London     Los Angeles     Munich     New York     San Francisco     Washington, D.C.

Daniel T. Shvodian, Esq.
March 8, 2006
Page 2

Guardian is prepared to do so, so long as you provide the necessary discovery in the form of documents and/or sample products for Guardian to review or test.

    Neither the Federal Rules of Civil Procedure nor the Scheduling Order in this case contemplate that the scope of discovery is to be limited on the basis of the parties' initial disclosures. That is the purpose of discovery. Guardian will not limit this case by dismissing Jean, Tatung and Tatung America before Guardian has had the opportunity to conduct the necessary discovery to determine whether these parties continue to infringe Guardian's patents-in-suit.

                                              Sincerely,

                                              Bryan S. Hales

# KIRKLAND & ELLIS LLP

AND AFFILIATED PARTNERSHIPS

200 East Randolph Drive
Chicago, Illinois 60601

Bryan S. Hales
To Call Writer Directly:
312 861-2119
bhales@kirkland.com

312 861-2000

www.kirkland.com

Facsimile:
312 861-2200

March 8, 2006

**VIA FACSIMILE**

Laura P. Masurovsky, Esq.
Finnegan, Henderson, Farabow, Garrett &
Dunner LLP
901 New York Avenue, NW
Washington, DC 20001-4413

Re:   *Guardian Industries Corp. v. Dell, Inc., et al.*

Dear Laura:

I write in response to your letter dated March 6, 2006 regarding Lite-On.

Guardian will not stipulate to a dismissal of the claims against Lite-On, as you request. You state that "Lite-On's Initial Disclosures identified other manufacturers of LCD modules as sources for Lite-On's products, all are now licensed." However, Lite-On identified "AMLCD" as a supplier for some of its products, and did not identify a supplier for its J15BAA product. Guardian is unable to confirm, based upon the information Lite-On has provided, whether all of Lite-On's suppliers are licensed. Therefore, Guardian will dismiss the case against Lite-On only if it either (1) settles the case with Guardian under the terms proposed by Robert Gorlin in his letter dated November 8, 2005, or (2) provides adequate representations that it does not sell monitors containing unlicensed LCD modules that use Fuji Wide View Film. An adequate representation would include:

- A written representation setting forth the steps Lite-On took to confirm that it has no unlicensed LCD module suppliers, or, if it does have unlicensed LCD module suppliers, to confirm that that the LCD modules purchased from those unlicensed suppliers do not contain Fuji Wide View Film; and

- A written confirmation that Lite-On does not sell any LCD products, either in the U.S. or abroad, that incorporate unlicensed LCD modules containing Fuji Wide View Film.

Should Lite-On have difficulty determining whether any unlicensed LCD modules use Fuji Wide View Film, Guardian is willing to assist Lite-On. It is our understanding that OEMs and resellers possess documents, such as specifications, for each of their products, and that such specifications often identify which products include retardation film. In addition, by

London        Los Angeles        Munich        New York        San Francisco        Washington, D.C.

Laura P. Masurovsky, Esq.
March 8, 2006
Page 2

disassembling an LCD module it is possible to tell whether the module utilizes retardation film. Both approaches present a relatively quick way to determine which unlicensed LCD modules incorporated into Lite-On products include film. If Lite-On is unwilling or unable to perform these tests, Guardian is prepared to do so, so long as you provide the necessary discovery in the form of documents and/or sample products for Guardian to review or test.

Neither the Federal Rules of Civil Procedure nor the Scheduling Order in this case contemplate that the scope of discovery is to be limited on the basis of the parties' initial disclosures. That is the purpose of discovery. Guardian will not limit this case by dismissing Lite-On before Guardian has had the opportunity to conduct the necessary discovery to determine whether it continues to infringe Guardian's patents-in-suit.

Sincerely,

*Bryan S. Hales /MZ*

Bryan S. Hales

# EXHIBIT C

```
                                                                 1


     1                  THE UNITED STATES DISTRICT COURT

     2                IN AND FOR THE DISTRICT OF DELAWARE

     3                              - - -

     4   HONEYWELL INTERNATIONAL, INC.      :    CIVIL ACTIONS
         et al.                             :
     5                                      :
                      Plaintiffs,           :
     6                                      :
                 v.                         :
     7                                      :
         AUDIOVOX COMMUNICATIONS CORP.,     :
     8   et al.                             :
                                            :    NO. 04-1337 (KAJ)
     9                Defendants.           :
         ---------------------------------
    10   HONEYWELL INTERNATIONAL, INC.      :
         et al.                             :
    11                                      :
                      Plaintiffs,           :
    12                                      :
                 v.                         :
    13                                      :
         APPLE COMPUTER, INC., et al.,      :
    14                                      :    NO. 04-1338 (KAJ)
                      Defendants.           :
    15                              - - -

    16                         Wilmington, Delaware
                       Friday, September 9, 2005 at 10:40 a.m.
    17                        TELEPHONE CONFERENCE

    18                              - - -

    19   BEFORE:       HONORABLE KENT A. JORDAN, U.S.D.C.J.

    20                              - - -
         APPEARANCES:
    21

    22         ASHBY & GEDDES
               BY:  STEVEN J. BALICK, ESQ.
    23
                         and
    24

    25                                         Brian P. Gaffigan
                                               Registered Merit Reporter
```

1       Mr. Lueck, back to you. I'll give you a chance to rebut.
2                MR. LUECK: Thank you, Your Honor. Basically
3       it's hard for me to understand how the burden could be
4       greater on the defendants to provide this information than
5       on Honeywell to go out and try to uncover every product that
6       each of these defendants have sold in the past.
7                THE COURT: Well, wait. I've got to wrestle
8       with you on that premise because at the start, I moved from
9       the baseline understanding that the way our adversary system
10      works is you learn of something that tells you you've been
11      wronged and then you go and you draft a complaint that
12      identifies that wrong and you come to court and you bring
13      somebody in to answer for that wrong. So when you start by
14      saying, gee, let's look at who has got the greater burden
15      here, why is it the burden of defendants in the first
16      instance to tell you everything they ever made with an LCD
17      module in it when there's apparently a reluctance or
18      unwillingness or inability on your part in the first
19      instance to make a case that a product actually does
20      infringe?
21               I'm probably giving away the way I'm thinking
22      right now, aren't I? I'm having a real problem with the
23      fundamental premise with your argument which is we think
24      there is other stuff out there that infringes and we want to
25      know everything you made in the last six years so we can

1   decide whether we got a case against you or not. That just
2   isn't how it works.
3              MR. LUECK: Well, Your Honor, I believe we have
4   made that showing. And what we have done is we've gone out
5   and bought a large number of products from a wide range of
6   customers or end manufacturing defendants. We've torn them
7   down. We've given the defendants detailed information on
8   what we believe is the infringement. We identified the
9   eight product ranges where we found it.
10             The modules come from module makers overseas.
11  We have no access to those individuals. And I think we've
12  satisfied our Rule 11 burden, we satisfied the pleading
13  burden on it, and then it becomes an issue of whether or
14  not this is reasonably calculated to lead to admissible
15  information, which we believe it is, and then it is an issue
16  of looking at the relative burdens. And in our view on
17  burden, we have a right to recover for damages going six
18  years back from the date of the complaint. These models
19  change rapidly and often. And we simply have no access to
20  records that would show us what those models have been.
21             THE COURT: Well, let me ask this, because
22  maybe we're talking past each other. When you say you have
23  satisfied your initial burden, is the assertion that you are
24  making that we have identified products, we've told them the
25  products that infringe and the only question is whether,

1   through various generations of different models of this
2   product, somehow there is some difference?  Or is there
3   something else going on that I'm not getting.
4              MR. LUECK:  No, I think you have captured it.
5   We've identified what the products are that have infringed
6   and we've specified what those types of products are and
7   we've given them specific model numbers as to ones we've
8   been able to purchase and tear down, but that doesn't mean
9   that we know all of the generations of those products that
10  they have introduced in the past.
11             THE COURT:  All right.  I'm going to ask the
12  gentleman who spoke on behalf of Matsushita, the Weil
13  Gotshal attorney if he will speak up at this point and
14  answer that point, which is:  Hey, we're not just on some
15  wholesale fishing expedition.  We've identified a product
16  and a product line and we just need to know the different
17  model numbers in that product line so that we're sure that
18  we've had a chance to investigate this product thoroughly,
19  which is what I understand Mr. Lueck to be saying.  What is
20  your response to that?
21             MR. BRAFMAN:  Your Honor, this is David Brafman
22  from Honeywell.
23             I'd just like to add one further point which is
24  our tear-down rate, on average it's about a 50 percent hit
25  rate under our belief of infringement across all these

```
1    products.  So it's not a wild fishing expedition as it is
2    made to sound.  It is that we found products, a large
3    percentage of them do hit and we just don't have access to
4    the models that change every six months.
5              THE COURT:  All right.  Mr. -- I'm sorry, I've
6    forgotten your name, sir.
7              MR. RIZZI:  It's Steve Rizzi from Weil Gotshal.
8              THE COURT:  Mr. Rizzi, I apologize for not
9    holding on to that name.  Go ahead.
10             MR. RIZZI:  That's okay.  I think along those
11   lines, Your Honor, there is room to meet in the middle here
12   from our perspective and, in fact, one of the cases that
13   Honeywell cited in its correspondence I believe is
14   instructive -- the IP Innovation case out of the Northern
15   District of Illinois -- I think is somewhat similar in the
16   sense that case involved certain chips that were found
17   in various models of televisions that were accused of
18   infringement, the basis for infringement being this specific
19   chip.  And what the plaintiff did originally was identify
20   specific television models that they believe included the
21   chip and were infringing.  And there, the Court allowed
22   discovery of other models of televisions that included that
23   same chip.  So discovery in the case were structured
24   around other future generations or products but only those
25   products that included the same chip as the specific models
```

```
 1          MR. WILLIAMS:  No, Your Honor.  Again, they
 2   identified six models out of 16-17.  They could certainly
 3   get the other models.  Through the tear-down, they could
 4   purchase them as easily as Dell could absorb the expense and
 5   tell us the modules in fact they're accusing of infringement
 6   rather than asking us to go back and conduct a unilateral
 7   analysis of our products and say, well, maybe this module
 8   infringes or maybe this one doesn't.  And I think the burden
 9   should be on them in the first instance to say a particular
10   LCD module in a particular computer model we contend meets
11   the elements of the claims in our patent instead of
12   vice-versa.
13          THE COURT:  All right.  And I am going to have
14   to get into a criminal proceeding here in a few minutes, so
15   I won't have an opportunity to resolve other issues that you
16   may have besides this one.
17          My understanding of what is being asked for has
18   shifted a little bit in the course of this conversation.
19   So instead of trying to speak in terms of what it is you
20   are asking for, let me tell you what I think you can
21   legitimately ask for and we can get this thing moving
22   forward.
23          I said in the order that I put out last May that
24   Honeywell was required to specifically identify accused
25   products.  And that's what I meant.  Not that Honeywell was
```

1    entitled to say, you know, we think all your cellular phones

2    infringe so we want you to tell us everything about all your

3    cellular phones. What I mean is if you've got a basis for

4    believing that a manufacturer's cellular phones are

5    infringing, and I mean you can say we've done this tear-down

6    on these specific products and these things appear to us to

7    infringe, well, then you are absolutely entitled to conduct

8    additional discovery with respect to those products, that

9    is, were earlier generations than the one you tore down.

10   Also, have they come out with subsequent generations of that

11   same model which could also be infringing?

12         But what you are not entitled to do is to say

13   you manufacture 15 different kinds of cell phones. We tore

14   down three. Tell us about your other 12. Because I agree

15   with the defendants that now what you are doing is you are

16   telling manufacturers, you know what? You got one or two

17   things that are bad. We want to you do an analysis of

18   everything you make and tell us whether you are guilty on

19   those fronts, too; and that is not what the law requires,

20   and it's not what I'm going to require them to do.

21         If you want to go out, you want to buy them, you

22   want to do the tear-downs, you want to get information that

23   prompts you to be able to say "now I know that this specific

24   model also infringes," then you can certainly do that. And

25   then you would be in an area where you could be requiring